**GANONG LAW OFFICE**
930 Truxtun Avenue, Suite 203
P. O. Box 192 (93302)
Bakersfield, California 93301
Telephone 661.327.3337
Facsimile 661.327.3395

Philip W. Ganong, SBN 88414

Attorneys for Plaintiff DAVID CHAD GLOW

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CHAD GLOW,<br><br>    Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY and DOES 1 through 20, inclusive,<br><br>    Defendants.<br><br>AND CONSOLIDATED RELATED ACTION. | Case No. 2:08-CV-01250-LKK-EFB<br><br>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION<br><br>Date:        August 17, 2009<br>Time:       10:00 a.m.<br>Courtroom: 4<br>Judge:      Hon. Lawrence K. Karlton |

## I. STATEMENT OF THE CASE

Plaintiff, David Chad Glow, filed a complaint for injuries under the Federal Employers Liability Act in the Northern District of California on May 10, 2005. This complaint related to personal injuries he sustained at the hands of Howard Redmond, an engineer for the Union Pacific during an altercation over safety issues related to the placement of a consist of locomotives in Alameda County.

Plaintiff had cervical fusion surgery in December of 2006 to treat the injury caused by engineer Redmond's punch to the right side of Mr. Glow's face. After returning to work, Mr. Glow sustained a re-injury to his neck during a 10 hour train trip from Portola, California to Elko, Nevada on September 14-15, 2007. [DMF 9]

-1-

Plaintiff and Defendants agreed to consolidate the Northern District complaint with the Eastern District complaint which was done by court order emanating from the Eastern District.

This matter is presently set for trial before the Honorable Lawrence K. Karlton, United States District Court for the Eastern District of California on January 26, 2010.

## II.   STATEMENT OF FACTS

Plaintiff David Chad Glow was injured in November of 2003, by a co-worker, Howard Redmond. Mr. Redmond struck Mr. Glow on the right side of his face while the two were in a disagreement about the safe position of a locomotive. Plaintiff Glow had fusion surgery to his cervical spine on December 6, 2007 to treat the damage from the November 2003 incident. [DMF 13] In June of 2007, Plaintiff was released without restrictions to return to work as a locomotive engineer. [UMF 1] The medical report releasing Mr. Glow without restriction to work for the Union Pacific as well as all other subsequent medical reports were faxed to Mr. Glow's ultimate supervisor, Ray Perry, the superintendent of the Roseville Service Unit for the Union Pacific. [DMF 1]

On July 25, 2007, Plaintiff's treating doctor, Jerome Scofferman, requested the Union Pacific accommodate Mr. Glow for his fused neck by providing certain minimum seat supports. Dr. Schofferman faxed a copy of the medical progress report containing this request to Ray Perry, superintendent. [DMF 2]. Plaintiff also sent Ray Perry a copy of Dr. Schofferman's prescription on July 30, 2007. [DMF 4] The Union Pacific did not acknowledge receipt of the request for accommodation, nor did they respond with any accommodation. [DMF 5]

On or about September 11, 2007, Dr. Schofferman placed restrictions on plaintiff's duties as a locomotive engineer due to the Union Pacific's failure to accommodate the plaintiff's fused neck. Dr. Schofferman notified the Union Pacific of that fact by fax on the same date. [DMF 3]

On September 14, 2007, Plaintiff was assigned to relieve a crew in Portola, California on a train that originated in Lathrop, California. Plaintiff was to take the train to Elko, Nevada to be relieved. [DMF 15] Plaintiff was advised by the conductor in Portola when he boarded the train that it had a bad order speedometer, meaning the speedometer was inaccurate and did not work properly. (*See* Plaintiff's Response & Supplemental Evidence in Opposition to Defendant's UMF 11].

-2-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION

The General Code of Operating Rules which govern defendant required the engineer Glow relieved to immediately report the malfunctioning speedometer to the defendant's dispatcher. [DMF 16]

The bad order speedometers were located at the engineer's console and overhead of the conductor's console, both looking forward out the locomotive cab. [DMF 14] The locomotive was also equipped with a GPS based speed indicator that was properly functioning on the electrical panel, located behind the engineer and conductor's seats. [DMF 10 & 12]

Plaintiff had track warrants which required him to observe speed restrictions and slow orders over certain portions of the track as well as to observe signal lights warning of on-coming trains and was required to monitor the systems of his locomotive and train on a constant basis. [Plaintiff's Response & Supplemental Evidence in Opposition to Defendant's UMF 18] (*See* Declaration of Glow, ¶4). Plaintiff relied upon the GPS speed indicator behind his seat to monitor the train's speed in order to obey the speed restrictions and slow orders that were contained in his track warrants. Relying on the GPS speed indicator, rather than calculating the locomotive's past speed utilizing a wrist watch and mile markers allowed plaintiff to focus his attention on the train systems, the written warrants and slow orders and the track's immediately ahead of him during his ten-hour trip. [Plaintiff's Response & Supplemental Evidence in Opposition to Defendant's UMF 18]

Plaintiff was unable to swivel his engineer's seat completely around to look at the speed indicator on the electrical panel behind him because the seat back would hit the side wall of the locomotive cab and the seat arm rests would strike the front console of the locomotive. [DMF 12] Therefore, Plaintiff had to rotate his head to his left and look over his shoulder on a frequent basis in order to monitor his speed and comply with slow orders and speed restrictions. [DMF 12] Placing his neck in rotation and his head turned left over his shoulder during this ten-hour trip caused Plaintiff to assume a posture that caused additional injury to his cervical spine. [DMF 9 & 11]

### III. ARGUMENT

#### A. PLAINTIFF'S LOCOMOTIVE SEAT COMPLAINT IS BASED ON THE CONDITION OF THE SEAT NOT ITS DESIGN

Defendant mis-characterizes plaintiff's complaint relating to the locomotive engineer's seat

-3-

as a "design" complaint in order to make a pre-emption/ preclusion argument. (See defendant's points and authorities pages 6 lines 9 through page 8 lines13: "To the extent that plaintiff's FELA claim in the present case is based on an inadequate <u>seat design</u> , his cause of action is preempted, or, more properly, precluded, by both the LIA and FRSA." (Emphasis supplied.)

The fifth paragraph of plaintiff's complaint alleges:

5. On or about September 14, 2007 Plaintiff was employed by Defendant as a locomotive engineer. During the course of Plaintiff's shift he was required to work on a locomotive running between Portola, California and Elko, Nevada. The speedometer on the engineer's instrument panel was not functioning <u>and the engineer's seat back was loose, unstable and arm rests were unsafe for the Plaintiff</u>. The malfunctioning speedometer caused Plaintiff to be required to constantly rotate his head and neck to look over his shoulder at the speedometer on the back panel in order to monitor his train speed during a full shift. This was coupled with an engineer's seat that was not adequate to protect Plaintiff from the injury causing potential of the usual shocks, jolts and vibrations customarily experienced on moving locomotive engines.

The twelfth paragraph of plaintiff's complaint alleges:

12. At all times material, during Plaintiff's employment, the locomotive engine on which Plaintiff was required to work was dangerous and defective within the meaning of the LIA (49 U.S.C. §§ 20701, et seq.) and the regulations promulgated by the FRA, in that, among other things, the locomotive engineer's panel speedometer and engine seat which Plaintiff was required to use was, under the circumstances, inadequate, unsafe and defective for their intended function; and, because the speedometer was malfunctioning Plaintiff was required to constantly rotate his head and neck to observe and monitor the speedometer located on the rear panel <u>and the locomotive engine seat on which Plaintiff worked and rode, unreasonably endangered Plaintiff in that the seat was not adequate to protect Plaintiff from the injury causing potential of the usual shocks, jolts and vibrations customarily experienced on moving locomotive engines which Plaintiff was required to use during the course of his work assignment on that date.</u> As a direct result of the above-described inadequate, defective and unsafe conditions, Plaintiff was exposed to unsafe and dangerous levels of shocks, jolts

-4-

and vibrations which caused unsafe levels of stress and strain upon the tissues and structures of his neck so that Plaintiff was caused to suffer the injuries and damages described in this claim.

Plaintiff has never claimed the seat was defective because of a design flaw and does not do so now.

Plaintiff does claim the seat was negligently maintained. Paragraph 6 of the complaint alleges in part:

> 6. Defendant was <u>negligent in its inspection, reporting, care and maintenance of the locomotive</u> in failing to provide a reasonably safe work environment for the Plaintiff and reasonably safe equipment with which to perform his job duties. As a result of the negligence and other conduct of Defendant UNION PACIFIC, and Does 1 through 20, and each of them, Plaintiff was caused to sustain serious and permanent injuries to his neck, and to sustain great pain and suffering all to Plaintiff's general damage.

### B. PLAINTIFF'S LOCOMOTIVE INSPECTION ACT (LIA) CLAIM FOR POOR SEAT MAINTENANCE IS SETTLED LAW.

Plaintiff's counsel is not clever enough to imagine new theories under the FELA or the LIA. Therefore he must rely upon settled case law. At least three U.S. District Courts have held poorly maintained seats in a locomotive to be a violation of the LIA. See *Kleeberg v. Norfolk So. RR.*, No. 00 C 963, (N.D. Illinois, Eastern Division 2001) jammed seat; *Terrell v. Soo Line RR.*, No. 2:04-cv-095-JDT-WGH, (S.D. Indiana, Terre Haute Division 2005) deflated seat cushion; and *Spade v. CSX Transp.*, No. 5:02-CV-129 (W.D. Michigan, Southern District 2004) broken seat back weld. (Copies of these cases are provided separately for the court's convenience. See Plaintiff's compendium of federal case authority.)

The plaintiff in *Kleeberg v. Norfolk So. RR.*, No. 00 C 963, (N.D. Illinois, Eastern Division 2001) alleged injury when he fell back into a seat while trying to get up and out of the way of an impact with a corner of a parked truck trailer that hung over the tracks of his approaching locomotive. Plaintiff claimed one of the seat's adjustment mechanism was broken which created inadequate room for his legs between the conductor's and fireman's seats. Plaintiff claimed that condition forced him

to sit with his legs to the side. Plaintiff alleged this caused him to lose his balance and fall back into the seat. The court denied the summary judgement sought by the railroad.

The court found the LIA did not require a seat to be adjustable. However, even though a locomotive's parts and appurtenances may satisfy federal regulations, the court concluded it may still be "unsafe" under the BIA's general provision, which impose a "broad duty to keep all parts and appurtenances of its locomotives in proper condition and safe to operate without unnecessary peril to life or limb. The court found the plaintiff had a viable LIA claim. Even though the LIA did not require an adjustable seat, "the dangerous condition arose from its alleged failure to maintain the second seat." ( See Kleeberg head note 2 & 3.)

In *Spade v. CSX Transp.*, No. 5:02-CV-129 (W.D. Michigan, Southern District 2004) plaintiff, an engineer, was sitting in his seat in the locomotive when the seat back broke. Plaintiff Spade alleged injury and sought partial summary judgment as to liability. The court granted partial summary judgment in plaintiff's favor.

The court held the existence of a broken weld was sufficient evidence it was not in proper operating condition. (See *Spade*, C." Analysis", head note 4.) The court also found the railroad violated 49 C.F.R. § 229.119 (a) "Cab seats shall be securely mounted and braced...." and 49 C.F.R. § 229.7 (a) (1) " The Locomotive Inspection Act (45 U.S.C. 22-34) makes it unlawful for any carrier to use or permit to be used on its line any locomotive unless the entire locomotive and its appurtenances- (1) Are in proper condition and safe to operate in the service to which they are put, without unnecessary peril to life or limb. (See *Spade*, D. "The Arguments" following head note 3.) Here, plaintiff Glow asserts "the engineer's seat back was loose, unstable and arm rests were unsafe for the Plaintiff", a violation of the same C.F.R. as alleged in *Spade*.

In *Terrell v. Soo Line RR.*, No. 2:04-cv-095-JDT-WGH, (S.D. Indiana, Terre Haute Division 2005) plaintiffs alleged an LIA claim based upon inadequate seat cushioning. Defendants motion for summary judgement relating to seat cushioning was denied.

Plaintiffs were an engineer and conductor who were involved in a crossing collision when a dump truck drove in front of the train. Plaintiffs alleged they bounced "up and down" upon impact

-6-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION

and were injured. ( See *Terrell* head note 2.) Unlike plaintiff in Glow, plaintiffs in *Terrell* did not allege the seat was loose or not securely mounted and braced. Plaintiffs in *Terrell* alleged the seats did not have enough cushioning. (*Id and Terrell head note 3)*. The court found an engine cab seat was a part or appurtenance of a locomotive, *Oglesby v. S. Pac. Transp. Co.*, 6 F. 3d, 603 ( 9th Cir. 1993) (*Terrell* head note 4, fn 6.) The court cited the same authority as did *Kleeberg* and *Spade*, once a carrier installs particular equipment on a locomotive, the BIA does require that it be maintained properly (*Terrell* head note 5.) It also found the plaintiffs' claim was based upon the seat cushioning not the seats themselves. ( *Id.*) The court found that: "Defendant had a duty under the LIA to properly maintain the seats and, it follows, the seat cushioning as well." (*Terrell* head note 6.) The court concluded in denying the summary judgement as to the LIA cause of action: "Whether the alleged inadequate cushioning in the seats left the locomotive unsafe to operate without unnecessary risk of personal injury is a factual question" (*Id.*)

    C. UNION PACIFIC'S FAILURE TO MAINTAIN THE ENGINEER'S SPEEDOMETER, LIKE A CAB SEAT, IS ALSO A CLEAR LIA VIOLATION.

The argument relating to the failure to maintain the engineer's seat applies equally to the engineer's speedometer. An accurate speedometer is required by 49 C.F.R. 229.117 on each locomotive controlling speed after December 31, 1980. It is a required piece of safety equipment. The defendant admits the engineer's speedometer was in bad order. [DMF 7] The defendant's engineer who Glow relieved was required to immediately notify defendant's dispatcher of the malfunctioning speedometer. [DMF 16] Defendant was, therefore, on notice of the defective speedometer in Lathrup, hours before plaintiff was called to relieve that crew. The failure to maintain the speedometer in the engineer's consol is a violation if it led to injury. Dr. Reynolds, plaintiff's surgeon and treating physician concluded that this defect caused and contributed to the plaintiff's neck injury. [DMF 9] In the instant case plaintiff alleges the failure to have a properly functioning speedometer caused his neck injury. (See paragraph 6 of the complaint restated verbatim above.) His experts conclusions support this factual causation claim. [ DMF 9 & 11]

////

#### D. IT IS DISPUTED THAT PLAINTIFF COULD SEE THE SPEEDOMETER FROM HIS NORMAL POSITION.

In addition, 49 CFR§ 229.117 requires the speed indicator must be "(2) Clearly readable from the engineer's normal position under all light conditions." 49 C.F.R. § 229.117(a) (2). (Emphasis supplied.) Plaintiff Glow was unable to read the GPS speed indicator from his normal position. [DMF 10&12] Glow testified that his seat would not freely swivel to view the speed indicator on the rear electrical panel behind his head. [DMF 12] Glow testified that in addition, he had to turn his head and look over his shoulder to monitor the speed. [DMF 12] There is a factual dispute as to whether the defendant violated this C.F.R.

#### E. NEITHER THE FRSA, LIA, NOR THE FELA PRE-EMPT A PENDANT STATE CAUSE OF ACTION FOR DISABILITY DISCRIMINATION.

Defendant has cited no case authority supporting a pre-emption theory based upon an independent right to be free of discrimination. Similar claims of preemption have been rejected where federal Railway Labor Act ( RLA) preemption was argued over FELA or ADA claims. Binding California and Ninth Circuit case law have repeatedly held that the RLA does not preempt discrimination claims brought under the FEHA and the Americans with Disabilities Act (ADA) because these claims are independent of any contractual rights the employee may have. [*Evans v. Southern Pacific Transp. Co.* (1989) 213 Cal.App.3d 1378, 1385 (FEHA not preempted by RLA); *Saridakis v. United Airlines* (9th Cir. 1999) 166 F.3d 1272, 1276-1277 (ADA and FEHA not preempted by RLA).]

In *Evans*, plaintiff, an engineer for the railroad, was injured during the course of his employment and he subsequently filed a FELA action. Plaintiff was dismissed from his employment when it was alleged that he had consumed alcohol while on the job. Plaintiff appealed his dismissal but prior to being reinstated, he filed a FEHA action against the railroad for employment discrimination based on race and disabilities arising from the injuries he sustained on the job. The trial court granted the railroad's summary judgment motion based on RLA preemption of the FEHA claims. The Court of Appeal reversed the judgment stating:

-8-

> Congress enacted the RLA in order to promote stability in the railroad industry and to provide for prompt and efficient resolution of labor-management disputes arising out of railroad collective bargaining agreements. [Citation.] The RLA provides a comprehensive framework for resolution of disputes in the railroad industry. All "disputes between ... [railroad] employees and ... carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" are minor disputes. [Citations.] A discharge grievance, a minor dispute, is subject to the internal grievance process and if not settled, is submitted to the National Railroad Adjustment Board established under the RLA. [Citations.]
>
> While the RLA remedy for the resolution of minor disputes is "at least in some situations" exclusive [citation], the RLA "is not basically a fair employment practice act nor has it been utilized as such." [Citation.] Accordingly, the RLA does not preclude a court's jurisdiction over claims based on federal civil rights statutes [citation]. [213 Cal.App.3d at 1383-1384 (emphasis added, citations omitted).]

In *Saridakis v. United Airlines*, the Ninth Circuit held that the ADA and FEHA claims of a discharged airline employee were not preempted by the RLA. In so concluding, the court stated:

> [T]he issue here is whether Saridakis's disability claims under the ADA and FEHA are, in the first instance, subject to the RLA. In addressing this threshold question, United's justification for terminating Saridakis is of no import. Our inquiry is strictly limited to determining if the rights under the ADA and FEHA are derived from sources independent of the CBA. We are satisfied they are. [¶] ... Here, the ADA and FEHA claims will require a court to examine whether United terminated Saridakis because of his disability. Although United may be able to introduce and rely upon the CBA and the last chance agreement as a part of its defense, under the Supreme Court's recent ruling that would not be enough to render the dispute minor and therefore subject to the RLA's dispute resolution mechanism. [166 F.3d 1272, 1277 (emphasis added).]

Contrary to defendant's assertions, plaintiff's right to be free of employment discrimination based on his neck fusion and his right to receive reasonable accommodation are governed by the FEHA and are wholly independent of any other remedies. California has established the unequivocal public policy that every person should be free to hold employment without discrimination based on disability. [Gov. Code § 12921(a).]

Defendant's FRSA & LIA preemption arguments similarly fail. Plaintiff is not requiring unreasonable accommodation. Defendant's own declaration, through R.O. Sweet, responded with one accommodation of a portable seat insert. Unfortunately, this offer was over a month after the

-9-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION

defendant negligently assigned plaintiff to a task they knew would expose him to a great risk of injury due to his medical limitations. [See defendant's UMF 5 & 6.] This would not require retro-fitting 6,000 locomotives. Merely a prompt and reasonable response.

Plaintiff's need for accommodation was known by and well documented to the defendant through plaintiff's doctor's medical reports to the defendant. [DMF 1.5, 7 & 8] Contrary to defendant's assertion plaintiff had a disability that required accommodation and restrictions which were timely requested and untimely responded to.

## IV.  CONCLUSION

A railroad may violate the LIA either: (1) by breaching the broad duty to keep all parts and appurtenances of its locomotives in proper condition and safe to operate without unnecessary peril to life or limb; or (2) by failing to comply with the regulations issued by the Federal Railroad Administration, McGinn v. Burlington N.R.R. Co., 102 F.3 295 (7th Cir. 1996) at 299. Defendant failed to keep locomotive number 4497 in safe condition due to the bad order speedometer and loose seat, both violations of the LIA. An appurtenance is any piece of equipment that is attached to a locomotive, including poorly maintained seats. Herold v. Burlington Northern, 761 F.2d 1241, 1245-47. (Rotating amber beacon light, even though not required by FRA, once installed becomes an appurtenance under the LIA.)

In light of the remedial purposes underlying the statute, the FELA is to be construed liberally in favor of the injured plaintiff. *Green v River Terminal Ry. Co.*, 763 F.2d 805, 806 (6th Cir. 1985). The Federal Locomotive Inspection Act, ("LIA"), imposes liability which "is absolute upon proof of an unsafe part and proximate cause." *Id* at 810. The bad order speedometer and poorly maintained seat are separate violations of the LIA and the UP is strictly liable for any additional damage to plaintiff's cervical spine.

Dated: July 31, 2009.                               **GANONG LAW OFFICE**

By: /s/ Philip W. Ganong
    Philip W. Ganong
    Attorneys for Plaintiff David Chad Glow

-10-