**GANONG LAW OFFICE**
930 Truxtun Avenue, Suite 203
P. O. Box 192 (93302)
Bakersfield, California 93301
Telephone 661.327.3337
Facsimile 661.327.3395

Philip W. Ganong, SBN 88414

Attorneys for Plaintiff DAVID CHAD GLOW

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| DAVID CHAD GLOW, | Case No. 2:08-CV-01250-LKK-EFB |
|---|---|
| Plaintiff, | OPPOSING PARTY'S RESPONSE AND SUPPLEMENTAL EVIDENCE IN OPPOSITION TO MOVING PARTY'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION |
| vs. | |
| UNION PACIFIC RAILROAD COMPANY and DOES 1 through 20, inclusive, | |
| Defendants. | |
| AND CONSOLIDATED RELATED ACTION. | Date:       August 17, 2009<br>Time:       10:00 a.m.<br>Courtroom:  4<br>Judge:      Hon. Lawrence K. Karlton |

Plaintiff, DAVID CHAD GLOW, submits the following response and supplemental evidence in opposition to Defendant UNION PACIFIC RAILROAD COMPANY'S motion for summary judgment and/or summary adjudication.

| UMF No. | Moving Parties Undisputed Material Fact and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| 1 | On June 8, 2007, following a medical leave, plaintiff was cleared to return to work without restrictions.<br>--------------------------------------<br>Glow Depo. at 11:25 to 12:5, attached as Exh. A to Cregger Decl.; Schofferman Depo. at 38: 12-16, and Exh. 3 attached thereto, attached as Exh. C to Cregger Decl. | Undisputed |

-1-

| UMF No. | Moving Parties Undisputed Material Fact and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| 2 | Subsequently, plaintiff sent Union Pacific's General Superintendent, Ray Perry, a cryptic note dated July 25, 2007, which appeared to be handwritten on a prescription pad, stating:<br><br>Reasonable accommodation<br>Ergonomic locomotive operator chair<br>   Head/neck rest/restraint<br>Good arm rests<br>Air or hydraulic ride<br>-----<br>Glow Depo. at 123: 15-19, 126: 20 to 127: 8, and Exhibit 4 attached thereto. | Plaintiff denies he sent a cryptic note. Plaintiff sent a copy of Dr. Jerome Schofferman's prescription for accommodation on July 30, 2007 by UPS ground delivery and that prescription is its own best evidence.<br><br>Glow Dec. ¶3, Ex. 2.<br><br>The prescription contains the quoted language as well as indicia which identifies it as a prescription from a medical doctor.<br><br>Glow Dec. ¶2, Ex. 1.<br><br>In addition Dr. Schofferman also faxed a copy of his progress report of 7-25-2007 which references the request for accommodation and the reasons for it, placing it in context of his medical examination and treatment.<br><br>Schofferman Dec. ¶4, Ex. 2. |
| 3 | Plaintiff's job as a locomotive engineer required him to operate whichever locomotive was traveling the road when plaintiff was called to duty.<br>-----<br>Glow Depo. at 132: 11-18.; Harlan Decl. at ¶ 5. | Plaintiff objects to the phrase "which ever locomotive was traveling the road" on the grounds that it is vague and ambiguous and requires plaintiff to speculate as to the meaning, subject to that objection:<br><br>Plaintiff admits that he is required to operate whichever locomotive he is assigned to when he is called to duty. |
| 4 | Union Pacific has over 8000 locomotives, any one of which plaintiff might be called on to operate.<br>-----<br>Harlan Decl. at ¶¶ 3, 5; Glow Depo. at 132: 11-18. | Plaintiff has no factual basis to admit or deny the number of locomotives the Union Pacific "has" and therefore can not admit to the allegation.<br><br>However, Plaintiff admits that he is required to operate whichever locomotive he is assigned to when he is called to duty. |

-2-

| UMF No. | Moving Parties Undisputed Material Fact and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| 5 | Union Pacific responded to plaintiff's note via a letter from Claim Director Richard Sweet, who informed plaintiff that his apparent request for a special type of locomotive seat was not feasible, because it would require Union Pacific to modify over 8000 locomotives.<br>--------<br>Sweet Decl. at ¶ 5 and Exh. B attached thereto. | Plaintiff objects to the reference that Richard Sweet is the Union Pacific on the basis that there is no foundation that Mr. Sweet was authorized as a corporate representative to speak on behalf of the Union Pacific and bind them on this issue. It appears that Union Pacific now represents that Mr. Sweet was authorized to speak on behalf of Union Pacific regarding accommodation to plaintiff.<br><br>With that understanding and assumption, plaintiff admits that Director of Claims, Roseville Service Unit, R.O. Sweet sent a letter on October 23, 2007 after plaintiff's injury of September 15, 2007 and 90 days after Union Pacific's Superintendent Ray Perry was notified by Dr. Schofferman's fax copy of a medical progress report justifying the request for accommodation, advising it was not feasible to modify all of its locomotives for plaintiff's benefit.<br><br>Schofferman Dec. ¶4, Ex. 2. |
| 6 | Instead, Union Pacific offered to purchase a McCarty's Sacro Ease Neck Ease or a McCarty's Sacro Ease Deluxe seat support for plaintiff, to be used by him on any locomotive to which he is assigned.<br><br>Sweet Decl. at ¶ 5 and Exh. B attached thereto | Plaintiff objects to the reference that Richard Sweet is the Union Pacific on the basis that there is no foundation that Mr. Sweet was authorized as a corporate representative to speak on behalf of the Union Pacific and bind them on this issue. It appears that Union Pacific now represents that Mr. Sweet was authorized to speak on behalf of Union Pacific regarding accommodation to plaintiff.<br><br>With that understanding and assumption, plaintiff admits that Director of Claims, Roseville Service Unit, R.O. Sweet sent a letter on October 23, 2007 after plaintiff's injury of September 15, 2007 and 90 days after Union Pacific's Superintendent Ray Perry was notified by Dr. Schofferman's fax copy of a medical progress report justifying the request for accommodation, advising it was not feasible to modify all of its locomotives for plaintiff's benefit.<br><br>Schofferman Dec. ¶4, Ex. 2. |

-3-

| UMF No. | Moving Parties Undisputed Material Fact and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| 7 | Plaintiff wrote in response, asking for additional information on the McCarty products.<br><br>Sweet Decl. at ¶ 6 and Exh. C attached thereto. | Admitted |
| 8 | Union Pacific wrote back, referring plaintiff to McCarty's website for additional product information.<br><br>Sweet Decl. at ¶ 7 and Exh. D attached thereto. | Admitted |
| 9 | Plaintiff made no further communications to Union Pacific regarding his request for modified seating.<br><br>Sweet Decl. at ¶ 8. | Denied.<br><br>Plaintiff's physician, Jerome Schofferman, M.D. faxed a copy of a medical progress report on September 11, 2007 to Union Pacific Superintendent Ray Perry which placed work restrictions on plaintiff's work in lieu of defendant's unwillingness to accommodated plaintiff's medical condition.<br><br>Schofferman Dec. ¶6, Ex. 4. |
| 10 | On September 14, 2007, plaintiff was assigned as a locomotive engineer to a train traveling in interstate commerce from Portola, California, to Elko, Nevada.<br><br>Glow Depo. at 17: 15-25; 12: 6-10. | Admitted |
| 11 | After plaintiff took control of the train, he noticed that the needle of the speedometer would start to bounce when the train reached approximately 50 m.p.h.<br><br>Glow Depo. at 24: 10 to 25: 8. | Plaintiff had been advised by the conductor of the crew plaintiff was relieving the speedometer was "malfunctioning" and inaccurate.<br><br>Ganong Dec. ¶3, Ex. 5.<br><br>Glow Depo. 19/22-25; 20/1-16.<br><br>Plaintiff admits, in addition, the bad order speedometer would begin to bounce at speed, he estimated approximately 50 miles per hour. |

OPPOSING PARTY'S RESPONSE AND SUPPLEMENTAL EVIDENCE IN OPPOSITION TO MOVING PARTY'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION

| UMF No. | Moving Parties Undisputed Material Fact and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| 12 | Plaintiff knew how to calculate the train's speed using his watch and the mile markers.<br><br>Glow Depo. at 37: 14 -17. | Admitted |
| 13 | Union Pacific had trained plaintiff to be able to calculate train speed using a watch the mile markers.<br><br>Glow Depo. at 37: 18 to 38: 23; Breedlove Decl. at ¶ 3 | Plaintiff cannot admit to this fact which appears incomplete and unintelligible. |
| 14 | Plaintiff had a watch.<br><br>Glow Depo. at 40: 11-12. | Admitted |
| 15 | Union Pacific's Roseville Area Timetable #4, a copy of which would have been available in the locomotive cab, includes a Table of Train Speeds to assist engineers in calculating train speeds using a watch and the mile markers.<br><br>Breedlove Decl. at ¶ 4 and Exh. C attached thereto. | Admitted |
| 16 | There was a working speed indicator in the locomotive's rear panel.<br><br>Glow Depo. at 30: 24 to 31: 1, 28: 1-13, 27: 18. | Admitted |
| 17 | Plaintiff could see the rear panel speed indicator from his engineer's seat.<br><br>Glow Depo. at 32: 19-21. | Plaintiff could not see the speed indicator on the rear panel from his normal position. [DMF 10 & 12] |

-5-

| UMF No. | Moving Parties Undisputed Material Fact and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| 18 | So rather than monitor the train's speed using his watch and the mile markers, plaintiff chose to monitor the train's speed by looking at the speed indicator on the rear panel.<br><br>Glow Depo. at 27: 16-18, 28: 1-6, 39: 18 to 40: 10. | Plaintiff chose to use the GPS speed indicator on the rear panel because it provided an instant read out of the locomotive's current speed, rather than how fast he had been going, and because he also had to monitor the track conditions, mile markers for slow orders due to bad track, signals to warn of other train traffic on the route to avoid collisions, and other working systems on the locomotive and train. Plaintiff understood that calculating speed using a watch, mile markers, and the conversion table would be utilized if there was no operational speed indicator whatsoever, or to verify the accuracy of a functioning speed indicator.<br><br>Ganong Dec. ¶3, Ex. 6;<br>Glow Depo. 39/18-25; 40/1-10 |
| 19 | Plaintiff testified that he looked back at the rear panel speedometer approximately every 30 seconds through the ten-hour trip.<br><br>Glow Depo. at 35: 19 to 36: 2. | Admitted |

| UMF No. | Moving Parties Undisputed Material Fact and Supporting Evidence | Opposing Party's Response and Supporting Evidence |
|---|---|---|
| 20 | At the time of this trip, plaintiff was working as a locomotive engineer without restrictions.<br><br>Glow Depo. at 121: 9-22; Schofferman Depo. at 38: 12-16, and Exh. 3 attached thereto, attached as Exh. C to Cregger Decl. | Denied<br><br>Plaintiff sent a copy of Dr. Jerome Schofferman's prescription for accommodation on July 30, 2007 by UPS ground delivery and that prescription is its own best evidence.<br><br>Glow Dec. ¶3, Ex. 2.<br><br>The prescription contains the quoted language as well as indicia which identifies it as a prescription from a medical doctor.<br><br>Glow Dec. ¶3, Ex. 2.<br><br>In addition, Dr. Schofferman also faxed a copy of his progress report of 7-25-2007 which references the request for accommodation and the reasons for it, placing it in context of his medical examination and treatment.<br><br>Schofferman Dec. ¶4, Ex. 2.<br><br>Plaintiff's physician, Jerome Schofferman, M.D., faxed a copy of a medical progress report on September 11, 2007 to Union Pacific Superintendent Ray Perry which placed work restrictions on plaintiff's work in lieu of defendant's unwillingness to accommodate plaintiff's medical condition.<br><br>Schofferman Dec. ¶6, Ex. 4. |

Dated: July 30, 2009.

**GANONG LAW OFFICE**

By: /s/ Philip W. Ganong

Philip W. Ganong

Attorneys for Plaintiff David Chad Glow

-7-