**GANONG LAW OFFICE**
930 Truxtun Avenue, Suite 203
P. O. Box 192 (93302)
Bakersfield, California 93301
Telephone 661.327.3337
Facsimile 661.327.3395

Philip W. Ganong, SBN 88414

Attorneys for Plaintiff DAVID CHAD GLOW

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CHAD GLOW, ) | Case No. 2:08-CV-01250-LKK-EFB |
| Plaintiff, ) | |
| vs. ) | DECLARATION OF PHILIP W. GANONG IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT UPRC'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION |
| UNION PACIFIC RAILROAD COMPANY and ) DOES 1 through 20, inclusive, ) | |
| Defendants. ) | Date:        August 17, 2009 |
| _____ ) | Time:        10:00 a.m. |
| ) | Courtroom:  4 |
| AND CONSOLIDATED RELATED ACTION. ) | Judge:       Hon. Lawrence K. Karlton |
| _____ ) | |

I, PHILIP W. GANONG, declare as follows:

1.    I am an attorney at law duly admitted to practice before all courts of the State of California. I am the attorney of record for plaintiff David Chad Glow in this matter.

2.    Attached as Exhibit 1 is a true and correct copy of a letter dated August 6, 2007 that I directed to attorney Thomas A. Cregger that enclosed a copy of a "reasonable accommodation" prescription written by plaintiff's treating physician, Dr. Jerome A. Schofferman on July 25, 2007.

3.    Attached as Exhibit 2, 3, 4, 5, 6, 7 and 8 are true and correct copies of relevant portions of plaintiff's second deposition which I personally attended on June 17, 2009.

4.    Attached as Exhibit 9 is a true and correct copy of the General Code of Operating Rules, Fourth Edition, Rule 1.39 Accuracy of Speed Indicator" which mandates the engineer must

-1-

1   immediately report any inaccuracy over 5 mph, plus or minus, of the speed indicator at 30 mph or

2   higher.

3       5.      Attached as Exhibit 10 is a true and correct copy of plaintiff's Request for Admissions,

4   Set Number One, together with defendant's verified responses that were personally received at my

5   office.

6       I declare under penalty of perjury under the laws of the State of California that the foregoing

7   is true and correct and this declaration was executed this 31st day of July, 2009, at Bakersfield,

8   California.

9                                   /s/ Philip W. Ganong
                                    Philip W. Ganong, declarant
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                  -2-

# EXHIBIT 1

## G. NONG & WYATT, LLP

Philip W. Ganong, APC                                                Ralph Wm. Wyatt

TRIAL LAWYERS

August 6, 2007

**VIA FACSIMILE & U.S. MAIL**
**916.443.2124**
Thomas A. Cregger, Esq.
RANDOLPH, CREGGER & CHALFANT, LLP
1030 "G" Street
Sacramento, CA 95814

Re:   Glow v. UPRC, Redmond, et al.
      Case No. C 05 01933 MMC

Dear Mr. Cregger:

I am enclosing a copy of a prescription written after Mr. Glow's last visit at SpineCare. As I understand the prescription, it calls for physical accommodation for Mr. Glow. Dr. Schofferman has requested a reasonable accommodation to include an ergonomic locomotive operator chair providing a head neck rest and restraint, good arm rests and an aero or hydraulic ride. It is our understanding that Dr. Schofferman's recommendations are to assist Mr. Glow in returning successfully to his duties as a locomotive engineer.

I am also advised that Mr. Glow provided the Union Pacific with a copy of this prescription by way of a UPS Ground shipment to Mr. Ray Perry at 10031 Foothills Blvd., Roseville, CA. It appeared that "Jones" signed for the package on July 31, 2007.

Please contact me if you have any further comments about the request for accommodation or should you wish to make further inquiry of Dr. Schofferman about the accommodation prior to the trial.

Thank you for your attention to the matter.

Very truly yours,

PHILIP W. GANONG

PWG/bja
Enclosure

*Plaintiff's Civil Litigation with Emphasis in:*
Personal Injury • Wrongful Death • Employment Class Actions • FELA • Professional Negligence
• Trust Litigation • Oil & Gas • Business & Real Estate • Wrongful Termination •

1712 19th Street, Suite 101, Bakersfield, CA 93301 ♦ P.O. Box 192, Bakersfield, CA 93302-0192 ♦ 661/327-3337  Fax 661/327-3395

SPINECARE
MEDICAL GROUP

☐ Jerome A. Schofferman, MD
☐ Paul J. Slosar, MD          (650) 985-7540
☐ Raymond Hsieh, MD
☐ Edward C. Sun, MD

1850 Sullivan Ave.
Suite 200
Daly City, CA 94015

☐ Noel D. Goldthwaite, MD
☐ James B. Reynolds, MD     (650) 985-7510
☐ Garrett D. Kine, MD

Name: _Guang David_____

Address: _____   Date: _7/25/07___ 20___

R  Reasonable accomodation
Ergonomic furniture operator chair
head/neck rest /restraint
Good arm rests
Air or hydraulic ride

Label as such:

_____   [signature]

Refill _____

SC-0002 (Rev. 02/06)

## Shipment Receipt: Page #1 o. 1

THIS IS NOT A SHIPPING LABEL. PLEASE SAVE FOR YOUR RECORDS.

**SHIP DATE:**
Mon, Jul 30, 2007

**EXPECTED DELIVERY DATE:**
TUES. JUL 31, 2007 EOD

**SHIP FROM:**
DAVID C. GLOW
10535 MEEKS BAY CT.
Reno  NV 89521
(775) 852-1614

**SHIP TO:**
UNION PACIFIC RAILROAD CO
ATTEN MR RAY PERRY
10031 FOOTHILLS BLVD
ROSEVILLE CA 95747-5146
Business

**SHIPPED THROUGH:**
The UPS Store #5314
RENO, NV 89521-4877
(775) 852-5575

**SHIPMENT INFORMATION:**
UPS Ground Commercial
0.1Lbs / 1Lbs Billed
Cust Pack: 1x1x1 in
Sig Req (w/Delv Confirm)

Tracking Number: 1Z99V0074219796571
Shipment ID: MMPJ8XUW68NBU
Or/ItemX: 7/28/07 Rw
Ref#: - -

**DESCRIPTION OF GOODS:**
documents

| SHIPMENT CHARGES: | |
|---|---|
| Ground Commercial | $5.84 |
| Service Options | $4.30 |
| Fuel Surcharge | $0.26 |
| Total | $10.40 |

COMPLETE ONLINE TRACKING:
Enter either of these addresses in your web browser to track:
http://shewanstore.com (select tracking, enter Shipment ID X)
http://ups.com (select tracking, enter Shipment ID X)

SHIPMENT REFERENCES:
Contact SHIPPER through above

Customer Acknowledgement
I acknowledge & accept Terms & Conditions in force for tendering shipments
through this location and certify that address, contents and values provided
for this shipment are accurate in all respects.

**Signature:**

Shipment ID: MMPJ8XUW68NBU

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

⊠Close Window



# Tracking Detail

**Your package has been delivered.**

Tracking Number:        1Z 99V 007 42 1979 657 1
Type:                   Package
Status:                 **Delivered**
Delivered On:           07/31/2007  9:04 A.M.
Signed By:              JONES
Location:               FRONT DESK
Delivered To:           ROSEVILLE, CA,  US
Shipped/Billed On:      07/30/2007
Service:                GROUND
Weight:                 .10 Lb

**Package Progress**

| Location | Date | Local Time | Description |
|---|---|---|---|
| ROCKLIN, CA, US | 07/31/2007 | 9:04 A.M. | DELIVERY |
|  | 07/31/2007 | 6:14 A.M. | OUT FOR DELIVERY |
|  | 07/31/2007 | 4:45 A.M. | DESTINATION SCAN |
|  | 07/31/2007 | 3:37 A.M. | ARRIVAL SCAN |
| SPARKS, NV, US | 07/30/2007 | 11:10 P.M. | DEPARTURE SCAN |
|  | 07/30/2007 | 7:55 P.M. | ORIGIN SCAN |
| US | 07/30/2007 | 8:35 P.M. | BILLING INFORMATION RECEIVED |

Tracking results provided by UPS: 08/04/2007  5:19 P.M.  ET

**NOTICE:** UPS authorizes you to use UPS tracking systems solely to track shipments tendered by or for you to UPS for delivery and for no other purpose. Any other use of UPS tracking systems and information is strictly prohibited.

⊠Close Window

Copyright © 1994-2007 United Parcel Service of America, Inc. All rights reserved.

# GANONG & WYATT, LLP

**TRIAL LAWYERS**
1712 19th Street, Suite 101
Bakersfield, California 93301
Mailing Address: P. O. Box 192, Bakersfield, CA 93302-0192

Fax (661) 327-3395

Telephone (661) 327-3337

## TELECOPIER TRANSMISSION

TO:    Thomas Cregger, Esq.
          Stephanie L. Quinn, Esq.
          Randolph, Cregger & Chalfant, LLP

FROM:   Philip W. Ganong, Esq. // Ralph Wm. Wyatt, Esq.

DATE:    August 6, 2007

FAX NO.:   916.443.2124

NUMBER OF PAGES:   5    (Including This Page)

RE:  Glow v. UPRC

**MESSAGE:**

The information contained in this facsimile is confidential and may also be privileged. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination distribution, or copying of this communication is strictly prohibited. If you have received the facsimile in error, please notify us immediately by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

If you have any problems with the reception of this transmission, please call **Yvette** at **661-327-3337**

```
                              *****************
                              *** TX REPORT ***
                              *****************

   JOB NO.              3604
   DEPT. ID             7
   ST. TIME             08/06 15:15
   PGS.                 5
   SEND DOCUMENT NAME
   TX/RX INCOMPLETE     -----
   TRANSACTION OK       19164432124
   ERROR                -----
```

# GANONG & WYATT, LLP

### TRIAL LAWYERS
1712 19th Street, Suite 101
Bakersfield, California 93301
Mailing Address: P. O. Box 192, Bakersfield, CA 93302-0192

Fax (661) 327-3395                                     Telephone (661) 327-3337

## TELECOPIER TRANSMISSION

TO:        Thomas Cregger, Esq.
           Stephanie L. Quinn, Esq.
           Randolph, Cregger & Chalfant, LLP

FROM:      Philip W. Ganong, Esq. // Ralph Wm. Wyatt, Esq.

DATE:      August 6, 2007

FAX NO.:   916.443.2124

NUMBER OF PAGES:     5     (Including This Page)

RE:   Glow v. UPRC

**MESSAGE:**

# EXHIBIT 2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

--oOo--

DAVID CHAD GLOW,

        Plaintiff,

  vs.                 CASE: 2:08 CV-01250
                                  LKK EFB

UNION PACIFIC RAILROAD COMPANY,
and DOES 1-20,

        Defendants.
_____/

CERTIFIED
COPY

Deposition of

DAVID CHAD GLOW

Wednesday, June 17, 2009

--oOo--

Reported By:    Stacey M. Gates, CSR #9255



1451 River Park Drive
Suite 275
Sacramento, CA 95815
(916) 482-0444
Fax (916) 482-5712

STATE OF CALIFORNIA )
                               ) ss
COUNTY OF SACRAMENTO )

REPORTER'S CERTIFICATE

    I certify that the witness in the foregoing deposition,

        DAVID CHAD GLOW,

was by me duly sworn to testify to the truth, the whole truth, in the within-entitled cause; that said deposition was taken at the time and place therein named; that the testimony of said witness was reported by me, a duly certified shorthand reporter and a disinterested person, and was thereafter transcribed into typewriting.

    I further certify that I am not of counsel or attorney for either or any of the parties to said deposition, nor in any way interested in the outcome of the cause named in said caption.

    IN WITNESS WHEREOF, I have hereunto set my hand this 30th day of June, 2009.

CERTIFIED
COPY

—————————————————————
STACEY M. GATES, CSR #9255
State of California

137

Deposition of David Glow

```
 1   that otherwise we could agree that when you refer
 2   to the 14th, we mean the route that transpired or
 3   covered the 14th and 15th.
 4               MS. MOTOOKA:  Yeah.  I understand that it
 5   went to the 15th.  I do.  I'm not suggesting
 6   otherwise, and I'm not suggesting that the injury
 7   occurred in only one portion.
 8               MR. GANONG:  That's fine.  I want to make
 9   sure that he's on board.
10               MS. MOTOOKA:  Okay.
11               THE DEPONENT:  Okay.  I'm on board and
12   we're still going here, right?
13               MR. GANONG:  Yes, we are.
14               MS. MOTOOKA:  Shall I repeat it?
15               THE DEPONENT:  Yeah.
16               MR. GANONG:  That might be a good idea.
17   Q.          BY MS. MOTOOKA:  You're alleging -- this
18   is just for clarification.
19               You're alleging that you were injured as a
20   result of the trip to Elko that commenced on
21   September 14th, 2007?
22   A.          Yes.
23   Q.          Okay.  Were you in any pain when you began
24   your work shift that day?
25   A.          I don't recall having any pain, no.
```

58

# EXHIBIT 3

Deposition of David Glow

1    Q.        BY MS. MOTOOKA:  Did you notice any
2    problem with the locomotive on the September 14th,
3    2007, trip to Elko?
4    A.        Yes.
5    Q.        Okay.  What did you notice?
6    A.        The seat back was loose.  The armrests
7    were loose.  Basically the whole seat assembly
8    wasn't -- wasn't in the greatest of shape, and it
9    was wobbly and loose kind of like this chair here
10   is.
11             MR. GANONG:  Okay.  You were rocking the
12   seat side to side when you said "like this chair."
13   Is that what you're saying?
14             THE DEPONENT:  Yes.
15             MR. GANONG:  Okay.
16             THE DEPONENT:  The seat was loose rocking
17   back and forth, side to side.
18   Q.        BY MS. MOTOOKA:  Did you notice any other
19   problems with the locomotive on that trip?
20   A.        It had a malfunctioning speedometer.
21   Q.        Other than the speedometer and the seat,
22   did you notice any other problems with the
23   locomotive on that trip?
24   A.        The locomotive we're talking -- let me
25   just get this clear.  We're talking about the

41

# EXHIBIT 4

Deposition of David Glow

1    A.        Yes.

2    Q.        So how many total speedometers are there

3    in a locomotive, this locomotive, that you were in?

4    A.        There -- there was three.

5    Q.        Okay.  Now, where is the rear console in

6    relation to the engineer seat?

7    A.        The rear console in relation to the

8    engineer seat is directly --

9             MR. GANONG:  Hang on a second.  I'm going

10   to object to the question as it relates to the term

11   "rear console" as being vague and ambiguous,

12   assumes facts not in evidence.  There is a lack of

13   foundation that a rear console exists as opposed to

14   a panel.

15            Go ahead, I'm sorry.

16   Q.        BY MS. MOTOOKA:  I'm sorry, did I

17   misspeak?  Is it a rear panel?  Would you prefer if

18   I called it a rear panel?

19   A.        Yes, that's what it is.

20   Q.        Okay.  I'm sorry, I wasn't trying to

21   change it into something that it wasn't.

22   A.        No, I believe I had said console.  Yeah,

23   it's a rear panel with a computer screen.

24   Q.        Okay.  So where is the rear panel in

25   relation to the engineer's seat?

31

Deposition of David Glow

1   A.        Directly behind the engineer and directly

2   behind the conductor.  It's a big wide panel that's

3   about as wide as the locomotive cab basically.

4   It's a big wide panel behind our seats.

5   Q.        Okay.  And I think you said you were able

6   to monitor the speed of the train by looking at the

7   console behind you.  I'm sorry, the panel behind

8   you.  The speedometer on the panel behind you.

9   A.        Looking at the computer screen which has a

10  speedometer function behind the engineer's seat on

11  the rear control panel, yes.

12  Q.        Okay.  And are you able -- you're able to

13  see this from where you're sitting to operate the

14  train?

15            MR. GANONG:  The question is vague and

16  ambiguous as to the term "you're able to see it."

17  Do you mean if he's sitting looking straight ahead

18  can he see it?

19  Q.        BY MS. MOTOOKA:  I mean do you have to get

20  up out of your chair to see the panel?

21  A.        No.

22  Q.        So you can see the panel from your --

23  A.        I have to turn around --

24  Q.        Okay.

25  A.        -- in order to see the panel.  You can't

Deposition of David Glow

1    see it by concentrating on the railroad in front of
2    you and the signals.  You have to actually turn
3    your head behind you to see the rear panel.
4    Q.        Okay.  You just demonstrated what you did
5    by swiveling your chair and kind of pointing back
6    behind you.  Were you able to swivel your chair in
7    the locomotive?
8    A.        Most of -- well, let's say -- I'm sorry,
9    we're talking about this locomotive in general.
10   The chair didn't swivel freely, no.
11   Q.        Okay.  What do you mean by it didn't
12   swivel freely?
13   A.        It didn't swivel freely because it hit the
14   engineer -- actually the control console, the
15   console for the engineer.  The seat, they're
16   high-back seats, so it hits and it doesn't allow
17   you to turn all the way around.  And this
18   particular seat wasn't in that greatest of shape to
19   begin with.  It was loose with a floppy back and it
20   kept hitting the engineer's control stand, so I
21   couldn't turn all the way behind me.
22   Q.        How far could you turn?  Like if you
23   measured it as an angle like could you turn 90
24   degrees?
25   A.        I don't believe so.  That seat I could

33

# EXHIBIT 5

Deposition of David Glow

1   Q.        Do you know Dale Fox?

2   A.        Personally?

3   Q.        Is there another way?

4   A.        Well, I worked with him one time.  I don't

5   really know the guy.

6   Q.        So you're acquainted with him?

7   A.        I've worked with him one time.

8   Q.        Only once?

9   A.        Only once.

10  Q.        Okay.  Do you recall having any

11  conversations -- well, let me back up.

12            You picked up the train in Portola?

13  A.        I boarded the train in Portola from the on

14  duty location, yeah.

15  Q.        And the train was coming in from someplace

16  else?

17  A.        The train was sitting on the mainline

18  waiting for me to get on it.

19  Q.        Okay.  Had it been brought in by another

20  crew?

21  A.        Yes.

22  Q.        Did you have -- do you recall having any

23  conversations with any of that inbound crew?

24  A.        Yes.

25  Q.        What was -- can you describe when those

Deposition of David Glow

1    conversations were?

2    A.        My conversation was with Mr. LaRue the

3    conductor on the inbound --

4    Q.        Okay.

5    A.        -- train.  He had told me that the

6    speedometer was malfunctioning, and it was -- it

7    was kind of bouncing back and forth up and down if

8    you will, that they relied on the rear panel to,

9    you know, get the accurate speed for the train.

10   Q.        Now, when Mr. LaRue told you that the

11   speedometer was malfunctioning or bouncing you

12   said?

13   A.        Uh-huh.  Yes.

14   Q.        Was that all the time or was it at certain

15   speeds?

16   A.        I don't recall.

17   Q.        Okay.  Did they -- did you speak with

18   anyone besides Mr. LaRue?

19   A.        I don't recall.

20   Q.        Okay.  Do you recall if you discussed with

21   the inbound crew any other issues with the train?

22   A.        No, I don't recall.

23   Q.        You don't recall.

24             So did you report the malfunctioning

25   speedometer to anyone at that point before leaving

20

# EXHIBIT 6

Deposition of David Glow

1   2007, trip to Elko?

2   A.        Not that I recall, no.

3   Q.        Why not?

4   A.        There was no calculating.  The speedometer

5   was bad.  It was malfunctioning.  It didn't work,

6   so there was really no calculating it.  It was no

7   good.

8   Q.        But can't you tell the speed of the train

9   based on the time and the mile markers along the

10  track?

11  A.        Yeah, that's a method that you could use

12  to verify your speed.

13  Q.        So when it -- I'm wondering -- what I'm

14  asking is I think you were saying it was very

15  painful for you to look at the rear panel behind

16  you to see the speed of the train?

17  A.        Yeah.

18  Q.        So what I'm asking is as an alternative

19  why didn't you calculate the speed of the train

20  using your watch and the mile markers instead of

21  looking behind you?

22  A.        To me it would be -- it would be a little

23  bit hard.  I've never ran a train using a stopwatch

24  before.  I've got a lot of things going on up in

25  that cab, you know, up in the locomotive cab.  I

39

Deposition of David Glow

1   have speed restrictions that I have to monitor.  I

2   have signals that I have to pay attention to.  I

3   have a conductor that's telling me stuff.  So, you

4   know, I didn't think of it I guess at the time.  I

5   had a speedometer at the rear that was working that

6   I was using.

7   Q.       Okay.

8   A.       So I used the tools that were provided to

9   get the job done or to get the train over the road

10  safely.  That's how I chose to do it.

11  Q.       You did have a watch though, right?

12  A.       Yes.

13  Q.       Okay.  Other than the faulty speedometer,

14  did you notice any other problems with the train on

15  that trip to Elko on September 14th/15th, 2007?

16  A.       I don't inspect the train, so to my

17  knowledge the train itself was fine.

18  Q.       Okay.  So you didn't notice any problems

19  with the seat, the engineer's seat?

20           MR. GANONG:  That's a locomotive.  Wendy,

21  these guys differentiate between the train which

22  could be the power units or the power concess and

23  the car concess.

24           MS. MOTOOKA:  Okay.  Let me rephrase.

25           MR. GANONG:  Okay.

40

# EXHIBIT 7

Deposition of David Glow

1   asking if the conductor seat is to the left of the

2   engineer's control stand or if it's in the back?

3   Q.        Well, it seems -- I think you said that

4   normally, and actually let's just say for this

5   particular train that you were on, the engineer's

6   seat was on the right side?

7   A.        Yes.

8   Q.        And the conductor was on the left?

9   A.        Yes.

10  Q.        So were they parallel to each other or is

11  one slightly more forward?

12  A.        Parallel.  Side by side.  Parallel just

13  across the cab.

14  Q.        Okay.  And so which speedometer was

15  malfunctioning?

16  A.        The engineer's speedometer which is on

17  this one, I believe, was above my head.  They put

18  them in two different spots.  Generally they'll be

19  above the head or in the middle, and the

20  conductor's speedometer I know looking back was

21  above his head and was not working either.  So both

22  of the speedometers, the engineer's and

23  conductor's, wasn't working or malfunctioning.

24  Q.        Okay.  So then there was another

25  speedometer in the rear console?

30

# EXHIBIT 8

Deposition of David Glow

```
1   ambiguous, lacks foundation, calls for speculation.
2           Go ahead.
3           THE DEPONENT:  Probably.
4   Q.      BY MS. MOTOOKA:  Okay.  And this is -- you
5   can remember it?  You remember feeling motor
6   weakness in your arm or hand, your right arm or
7   hand, prior to your surgery?
8   A.      Yes.
9   Q.      Okay.  When you --
10          MR. GANONG:  Before you ask the next
11  question I would like to take a quick break if I
12  may.
13          MS. MOTOOKA:  Sure.
14          (Recess taken.)
15  Q.      BY MS. MOTOOKA:  So on September 14th,
16  2007, you were working on the KLTG14 locomotive?
17  A.      Be a KLTG1.  That's a train symbol.
18  Q.      Okay.
19  A.      KTL isn't a complete train.
20  Q.      But you were working on the 14th of
21  September?
22  A.      Yes.
23  Q.      Okay.  And was this a -- which run were
24  you doing?
25  A.      Portola to Elko.
```

17

# EXHIBIT 9

### 1.36    Excessive Dimension Loads

Place excessive dimension loads on or near the head end of trains.

Instructions will be issued to trains handling excessive dimension loads. If no instructions have been issued regarding handling the car, the conductor will immediately notify the train dispatcher.

Crew members handling excessive dimension equipment must ensure that the equipment will clear nearby objects, including equipment on adjacent tracks. If the train cannot reach a point with enough clearance, crew members must make sure protection is provided against movements on adjacent tracks.

### 1.37    Open Top Loads

Flat cars, open top cars, and open top TOFCs/COFCs with loads that are likely to shift must not be placed in trains next to the following if train length and makeup permit:

• Occupied outfit car

• Passenger car

• Engine

• Caboose

• Shipment of automotive vehicles and machinery that is not fully enclosed

This restriction does not apply to cars with permanent tie-downs.

### 1.38    Shipments Susceptible to Damage

Shipments with painted or finished surfaces susceptible to damage, such as automobiles, trucks, tractors, combines, and other similar equipment or machinery, must not be placed closer than the fifth car behind open top cars loaded with commodities such as coal, sand, gravel, lime, soda ash, etc. subject to wind, vapor, or fume action on adjacent cars. Exceptions include shipments susceptible to damage that are:

• loaded in cars that fully enclose the shipments.

    or

• fully protected by a covering.

An open top car loaded with sand, gravel, lime, soda ash, etc. subject to wind, vapor, or fume action in other than a solid unit train must not be placed immediately ahead of an occupied caboose.

### 1.39    Accuracy of Speed Indicator

The engineer must verify speed indicator accuracy as soon as possible after taking charge of the engine. If the speed indicator is not accurate to within 3 MPH plus or minus at speeds of 10 to 30 MPH and to within 5 MPH plus or minus at speeds above 30 MPH, the engineer must immediately report the variance to the train dispatcher.

# EXHIBIT 10

1    RANDOLPH CREGGER & CHALFANT LLP
THOMAS A. CREGGER, ESQ., State Bar No. 124404
2    tac@randolphlaw.net
STEPHANIE L. QUINN, ESQ., State Bar No. 216655
3    slq@randolphlaw.net
1030 G Street
4    Sacramento, California 95814
Telephone: (916) 443-4443
5    Facsimile: (916) 443-2124

6    Attorneys for Defendant
UNION PACIFIC RAILROAD COMPANY

7

8

9            IN THE UNITED STATES DISTRICT COURT

10        FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12
   DAVID CHAD GLOW,               No. 2:08CV01250 LKK EFB
13
            Plaintiff,          **DEFENDANTS RESPONSE TO**
14                               **REQUEST FOR ADMISSIONS,**
                                    **SET ONE**
15        vs.

16    UNION PACIFIC RAILROAD COMPANY and
DOES 1-20;
17
            Defendants.
18    _____/

19    PROPOUNDING PARTY:    Plaintiff DAVID CHAD GLOW

20    RESPONDING PARTY:      Defendant UNION PACIFIC RAILROAD COMPANY

21    SET NO.:                One

22         UNION PACIFIC RAILROAD COMPANY submits the following in response to DAVID

23    CHAD GLOW's Request for Admissions. The answers set forth hereafter are based on present

24    information and belief only. Investigation into the subject matter of these requests is continuing,

25    and said responding party reserves the right to assert at the time of trial any fact or facts which may

26    be discovered by it.

                                        1

Randolph
Cregger &
Chalfant

RECEIVED FEB 17 2009

1  **REQUEST FOR ADMISSION NO. 1**

2      That David Chad Glow was employed by Union Pacific Railroad Company on September

3  14 and 15, 2007.

4  **RESPONSE TO REQUEST FOR ADMISSION NO. 1**

5      Admit.

6  **REQUEST FOR ADMISSION NO. 2**

7      That Union Pacific Railroad Company is a common carrier by railroad.

8  **RESPONSE TO REQUEST FOR ADMISSION NO. 2**

9      Admit.

10  **REQUEST FOR ADMISSION NO. 3**

11      That Union Pacific Railroad Company is engaged in interstate commerce.

12  **RESPONSE TO REQUEST FOR ADMISSION NO. 3**

13      Admit.

14  **REQUEST FOR ADMISSION NO. 4**

15      That on September 14 and 15, 2007, David Chad Glow's job duties furthered, or

16  substantially affected, interstate commerce.

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 4**

18      Admit.

19  **REQUEST FOR ADMISSION NO. 5**

20      That David Chad Glow was acting within the scope of his employment at the time he was

21  operating UP 4497 power unit on September 14 and 15, 2007.

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 5**

23      Admit.

24  **REQUEST FOR ADMISSION  NO. 6**

Randolph
Cregger &  25      That Union Pacific Railroad Company did not furnish David Chad Glow with a safe work
Chalfant
26  place on UP 4497 on September 14 and 15, 2007, in that the power unit had a bad order

DEFENDANTS RESPONSES TO REQUEST FOR ADMISSIONS, SET ONE

1  speedometer on the engineer's instrument panel at that time.

2  **RESPONSE TO REQUEST FOR ADMISSION NO. 6**

3      Objection. Compound.  Without waiving said objection, denied.

4  **REQUEST FOR ADMISSION NO. 7**

5      That David Chad Glow was harmed by Union Pacific Railroad Company's failure to have

6  a good operating speedometer on the engineer's instrument panel on UP 4497 power unit on

7  September 14, 2007.

8  **RESPONSE TO REQUEST FOR ADMISSION NO. 7**

9      Denied.

10  **REQUEST FOR ADMISSION NO. 8**

11      That Union Pacific Railroad Company's failure to have a good operating speedometer on

12  the engineer's instrument panel on UP 4497 power unit negligence on September 14, 2007 was a

13  cause of David Chad Glow's harm.

14  **RESPONSE TO REQUEST FOR ADMISSION NO. 8**

15      Denied.

16  **REQUEST FOR ADMISSION NO. 9**

17      That the speedometer on the engineer's instrument panel on UP 4497 power unit was in bad

18  working order on September 14, 2007.

19  **RESPONSE TO REQUEST FOR ADMISSION NO. 9**

20      Admit.

21  **REQUEST FOR ADMISSION NO. 10**

22      That the bad order speedometer on the engineer's instrument panel on UP 4497 power unit

23  was a cause of harm to David Chad Glow.

24  **RESPONSE TO REQUEST FOR ADMISSION  NO. 10**

Randolph
Cregger &
25      Denied.
Chalfant

26  **REQUEST FOR ADMISSION NO. 11**

1    That the condition of the speedometer on the engineer's instrument panel on UP 4497

2    power unit was a cause of harm to David Chad Glow.

3    **RESPONSE TO REQUEST FOR ADMISSION NO. 11**

4        Denied.

5    **REQUEST FOR ADMISSION  NO. 12**

6        That David Chad Glow's job duties on September 14, 2007 included an affirmative duty

7    to maintain a safe speed for his train.

8    **RESPONSE TO REQUEST FOR ADMISSION NO. 12**

9        Objection. The request is vague and ambiguous. Admit that Glows' job duties required

10   him to maintain a safe speed for his train.

11   **REQUEST FOR ADMISSION NO. 13**

12       That David Chad Glow's job duties on September 14, 2007 required him to regularly and

13   constantly monitor his train speed by using the speedometers located in the cab of the power unit.

14   **RESPONSE TO REQUEST FOR ADMISSION NO. 13**

15       Objection. The request is vague and ambiguous and compound. Denied.

16   **REQUEST FOR ADMISSION  NO. 14**

17       That FRA regulations require the lead locomotive in a train's power consist to have a

18   properly functioning speedometers.

19   **RESPONSE TO REQUEST FOR ADMISSION NO. 14**

20       Denied.

21   **REQUEST FOR ADMISSION NO. 15**

22       That FRA regulations require the cab of the lead locomotive in a train's power consist to

23   have two properly functioning speedometers.

24   **RESPONSE TO REQUEST FOR ADMISSION NO. 15**

Randolph
Cregger & 25       Denied.
Chalfant
26   **REQUEST FOR ADMISSION NO. 16**

4

1       That on September 14, 2007, the speedometer on UP 4497's power unit located on the

2  electrical panel behind the engineer's seat was in good working order.

3  **RESPONSE TO REQUEST FOR ADMISSION NO. 16**

4       Admit.

5  **REQUEST FOR ADMISSION NO. 17**

6       That on September 14, 2007, the speedometer on UP 4497's power unit located on the

7  engineer's instrument panel was not in good working order.

8  **RESPONSE TO REQUEST FOR ADMISSION NO. 17**

9       Admit.

10  **REQUEST FOR ADMISSION NO. 18**

11       That the train crew of Jim Worthington and Dave LaRue who operated UP 4497 on

12  September 14, 2007 reported to the UP dispatcher on duty at the time a bad order speedometer on

13  the engineer's instrument panel.

14  **RESPONSE TO REQUEST FOR ADMISSION NO. 18**

15       Defendant is without sufficient information to admit or deny the request and on that basis

16  denies it.

17  **REQUEST FOR ADMISSION NO. 19**

18       That a properly functioning speedometer on a power unit must be accurate within 3 miles

19  per hour.

20  **RESPONSE TO REQUEST FOR ADMISSION NO. 19**

21       Denied.

22  **REQUEST FOR ADMISSION NO. 20**

23       That the function of the speedometer on UP 4497 on September 14, 2007 located on the

24  engineer's instrument panel did not comply with the requirements of the Railway Safety Act.

25  ///

26  ///

Randolph
Cregger &
Chalfant

1  **RESPONSE TO REQUEST FOR ADMISSION NO. 20**

2

3      Denied.

4  Dated: February 13, 2009                RANDOLPH CREGGER & CHALFANT

5

6                                          _____
                                           THOMAS A. CREGGER
7                                          Attorneys    for    Defendant    UNION    PACIFIC
                                           RAILROAD COMPANY
8

9

10
   M:\Open\10\2036 Glow#2\USED- Consolidated Cases\Discovery\Resp to RFA's Set One  of plaintiff.wpd
11

12

13

14

15

16

17

18

19

20

21

22

23

24

Randolph
Cregger & 25
Chalfant

26

DEFENDANTS RESPONSES TO REQUEST FOR ADMISSIONS, SET ONE

1

**VERIFICATION TO FOLLOW**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**Randolph
Cregger &**  25
**Chalfant**

26

DEFENDANTS RESPONSES TO REQUEST FOR ADMISSIONS, SET ONE

1

**PROOF OF SERVICE**

2    **CASE:**    David Chad Glow v. Union Pacific Railroad Company, et al.
     **NO:**      U. S. District Court, Eastern District of California, No. 2:08cv01250

3

     The undersigned declares:

4

5        I am a citizen of the United States and a resident of the County of Sacramento. I am over the age of 18 years and not a party to the within above-entitled action; my business address is 1030 G Street, Sacramento, CA 95814.

6

7        I am readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service; said correspondence will be deposited with the United States Postal Service the same day in the ordinary course of business.

8

9        On the date indicated below I served the within **DEFENDANTS RESPONSE TO REQUEST FOR ADMISSIONS, SET ONE** on the following parties as addressed below by causing a true copy thereof to be **placed in a sealed envelope** with postage thereon fully prepaid

10   in the designated area for outgoing mail:

11   Attorney for Plaintiff DAVID CHAD GLOW
     Philip W. Ganong, Esq.

12   GANONG LAW OFFICE
     930 Truxton Avenue, Suite 203

13   P.O. Box 192
     Bakersfield, CA 93301

14   Telephone: (661) 327-3337
     Facsimile: (661) 327-3395

15

16   Attorney for Defendant/Counter-Claimant HOWARD REDMOND
     Jean Schaefer, Esq.

17   LAW OFFICES OF JEAN SCHAEFER
     1337 Howe Ave., Suite 106

18   Sacramento, CA 95825
     Telephone:      (916) 925-4400

19   Facsimile:      (916) 925-2019

20       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

21

22   Executed this February 13, 2009, at Sacramento, California.

23   CAROLYN ALAPODACA

24

Randolph,
Cregger & 25
Chalfant

26

- 1 -

# RC Randolph Cregger & Chalfant LLP

## ATTORNEYS AT LAW

Thomas A. Cregger
Robert L. Chalfant
Stephanie L. Quinn
Joseph P. Mascovich
Michelle J. Randolph

John S. Gilmore
Samuel L. Jackson
Adrian L. Randolph
*Of Counsel*

February 19, 2009

Philip W. Ganong, Esq.
GANONG LAW OFFICE
P. O. Box 192
Bakersfield, CA 93302

Re:    Glow v. Union Pacific Railroad Company, et al.

Dear Mr. Ganong:

Enclosed please find the original verifications to Responses to Plaintiff's Request for Production of Documents, Set Two, Responses to Plaintiff's Interrogatories, Set One and Responses to Plaintiff's Request for Admissions, Set One.

Very truly yours,

RANDOLPH CREGGER & CHALFANT LLP

Carolyn A. Apodaca
Secretary to THOMAS A. CREGGER

Enclosures

caa

cc:    Jean Schaefer, Esq.

M:\Open\10\2036 Glow#2\USED- Consolidated Cases\Correspondence\ganong ltr 2-19-09 re verifications .wpd

The Achelle Bldg.
1030 G Street
Sacramento,
California 95814
(916) 443-4443
(916) 443-2124 Fax
rcc-law.com

RECEIVED FEB 2 3 2009

Glow v. UP

## VERIFICATION

I, DEBORAH L. MARR, declare as follows:

I have read the foregoing document

RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS, SET ONE

I am informed and believe that the matters stated therein are true and correct. Said responses are derived from records provided by various sources at Defendant Union Pacific Railroad Company, formerly known as Southern Pacific Railroad Company, and from information thus far obtained by Defendant Union Pacific Railroad Company's investigation of Plaintiff's claim. Said responses are, therefore, necessarily limited by the records and information still in existence, presently collected, and thus far discovered in the course of preparing this response.

I make this Verification because as a Manager-Litigation for Union Pacific Railroad Company, I am given authority to verify this document, and the information contained therein is more familiar to me than the officers of the Union Pacific Railroad Company.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

This declaration was executed on February 13, 2009, at Roseville, CA.

_Deborah L. Marr_
DEBORAH L. MARR