**GANONG LAW OFFICE**
930 Truxtun Avenue, Suite 203
P. O. Box 192 (93302)
Bakersfield, California 93301
Telephone 661.327.3337
Facsimile 661.327.3395

Philip W. Ganong, SBN 88414

Attorneys for Plaintiff DAVID CHAD GLOW

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CHAD GLOW,<br><br>               Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY and DOES 1 through 20, inclusive,<br><br>               Defendants.<br><br>AND CONSOLIDATED RELATED ACTION. | Case No. 2:08-CV-01250-LKK-EFB<br><br>DECLARATION OF JAMES B. REYNOLDS, M.D. IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT UPRC'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION<br><br>Date:      August 17, 2009<br>Time:     10:00 a.m.<br>Courtroom: 4<br>Judge:    Hon. Lawrence K. Karlton |

I, JAMES B. REYNOLDS, M.D., declare as follows:

1. I am a Doctor of Medicine licensed under State of California and a surgeon practicing with SpineCare Medical Group, Inc. in Daly City, California.

2. I have been treating plaintiff David Chad Glow since October 2006.

3. Attached as Exhibit 1 to this declaration is a true and correct copy of a report dated April 28, 2009, that I have recently finalized that contains my conclusions regarding causation.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was executed this 29th day of July, 2009, at Daly City, California.

                                                           *[signature]*
                                               James B. Reynolds, M.D., declarant

-1-

DECLARATION OF JAMES B. REYNOLDS, M.D. AND/OR SUMMARY ADJUDICATION IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT UPRC'S MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION

# EXHIBIT 1

# SpineCare
## MEDICAL GROUP

April 28, 2009

Philip W. Ganong, Attorney-At-Law
924 Truxtun Avenue
Bakersfield, CA 93301

FAX: (661) 327-3395

        RE: David Glow
        SpineCare #: 184165

Dear Mr. Ganong:

This is the report that you had requested that describes the causation of the patient's condition, his condition, and his treatment.

David Glow was injured by a co-worker on November 6, 2003, at approximately 9:30 p.m. The patient received a blow to the right side of his face in the jaw area by a fellow worker. The patient did not expect the blow and was unprepared to defend himself. The patient received medical care in an emergency room the evening of the injury. The following day, the patient was seen by Dr. Modi (family phyisican) complaining of extreme migraine type pain, sharp pain in the back and the neck, a feeling of being dizzy, and having blurred vision. He also had pain in his jaws. He vomited 3 times on the following day.

I first saw the patient in consultation at the request of Dr. Jerome Schofferman on 10/10/06. The patient complained of neck pain, right arm pain, and numbness in the arm. The patient had been driving a locomotive for many months up to 80 hours in a week. Prior to the 11/06/03 injury, the patient stated that he had no prior history of neck problems. He was able to work without any loss of work due to neck pain. The patient continued working after the injury up until July 11, 2006.

The patient's physical exam on 10/10/06 showed limitations in flexion-extension in the cervical spine and pain with palpation at the C4-5 level. The MRI on February 16, 2006, showed a very slight right-sided uncovertebral spurring at the C4-5 level. The C5-6 level showed a slight left-sided uncovertebral spurring. The C6-7 had a broad-based annular disc bulge. X-rays of February 16, 2006, showed straightening of the of the cervical spine and loss of the normal lordosis.

The patient, under the care of Dr. Schofferman, had had extensive conservative care including physical therapy and various injections including the medial branch blocks, neurotomies, and discography. The patient, on April 19, 2006, had intraarticular facet injections as well as medial branch blocks of the innervation of the facets. The patient had about 50% relief of pain and went on to have a neurotomy on

Page 2
April 28, 2009
Re: David Glow

June 2, 2006. Neurotomy did not produce any significant improvement. The patient underwent cervical discography of C3-4, C4-5, C5-6, and C6-7. The procedure was performed by Dr. Raymond Hsieh on August 16, 2006. During discography, no pain was reported at the C3-4, C5-6, and C6-7 levels. All the levels had no leak of the contrast, and all had a high pressure applied during the discography. The C4-5 level had a 10/10 concordant pain, and an annular fissure or leak of the contrast material was noted.

At the consultation of October 10, 2006, it was evident from the patient's history that this gentleman had sustained a very sharp blow to the face striking the right jaw, severe enough to cause concussion, type symptoms, severe headache and vomiting the following day. It was severe enough to seek medical treatment as soon as possible after the injury and require administration of additional medical treatment the following day because of severe headache, dizziness, and vomiting, all the signs of a concussion. I found the following indications for surgery to relieve his symptoms. The patient has had extensive conservative care in the 2 years and 10 months since the time of the injury. The patient has had treatments including trigger point injections, physical therapy, facet blocks, and facet neurotomies. All of them did not relieve the patient's pain, and the pain during this time had escalated requiring strong narcotic medications. The patient underwent discography showing that the C4-5 disc was extremely painful and the adjacent discs were all normal. During the initial consultation, the patient was instructed to stop chewing or using nicotine in any form, which he was able to do.

The patient, on November 16, 2006, was re-evaluated, and because of persistent pain, he was scheduled for a cervical discectomy and fusion. On December 6, 2006, I performed the anterior cervical discectomy and fusion at C4-5. As a routine part of the procedure, indigo carmine, a blue dye, is injected into the disc space to help identify the nucleus and to demonstrate any tears in the annulus. The patient had very abnormal nuclear pattern and the posterior annulus was torn in multiple areas particularly posterolaterally on both the left and right side. There were osteophytes at the posterolateral corners that were enlarged. The enlargements of the normal uncinate process had caused a stenosis in the foramen, much more so on the right than on the left. There are number of reasons to conclude that this patient's neck pain arises from the blow to Mr. Glow's chin. The patient was not expecting such a blow, was unprepared, and had no way of defending himself nor were his muscles prepared to protect his neck because of the unexpected nature of the blow. The blow was obviously a severe blow or punch because of the symptoms that indicate the patient had a concussion as a result of the blow. The patient had no prior history of neck pain and had been able to work as a conductor and qualify as an engineer on a locomotive, working many hours in a week without any history of neck pain, care for his neck, or loss of work time because of his neck. The discography showed the C3-4, C5-6, and C6-7 discs were all normal. The discograms were performed with high pressure at the normal levels very high pressure. There was no leak. No pain was produced. The fact that no pain was produced makes this a valid discogram since the 3 discs served as a control. The C4-5 disc had a leak with the discogram, and a reproduction of the patient's typical at 10/10 and identical or concordant pain. Surgical procedure further confirms the abnormality of the disc with the indigo carmine showing multiple tears that have arisen from the patient's injury.

The patient's surgery was necessary because of persistent pain despite extensive conservative care following the injury. The patient's dedication to work was obvious since he returned to work after the injury in November 2003 until he was taken off work by Dr. Schofferman in July 2006. The patient could

Page 3
April 28, 2009
Re: David Glow

not continue to work and should not continue to work because of his severe cervical pain. The patient also is requiring strong narcotic to control his pain. The patient had had extensive conservative care including physical therapy, trigger point injections, and facet neurotomies. None of these procedures relieved his pain. Surgical discectomy and fusion has been documented in the literature to be successful in the relief or reduction of neck pain in a patient with a painful disc.

There are multiple articles that support the treatment of a painful disc with a fusion. I have reviewed the following articles that evaluate the outcome of a cervical fusion for treatment with neck pain from a painful disc: Gore and Scepic Spine 1998, Palit and Schofferman, et al. Spine 1999, Ratliff and Voorhies Southern Medical Journal 2001, Garvey, Transfeldt, et al. Spine 2002, Wieser ND and Wang Neurosurgery 2006. All the above articles show a successful outcome for treatment of neck pain secondary to painful degenerative disc with a cervical fusion. The patient was much improved after the cervical discectomy and fusion of C4-5, on December 6, 2006. The patient was re-evaluated on April 13, 2007, and much improved. The patient was to begin physical therapy, and the patient was allowed to return to a light duty re-entry work program. Unfortunately, light duty was apparently not available. The CT of May 22, 2007, was seen and evaluated by me on June 7, 2007. The fusion was solid and was completely fused at the C4-5 level. The patient was released for return to duty on July 8, 2007. The patient returned to see Dr. Schofferman on July 25, 2007. The patient has been working as a locomotive engineer for approximately 5 weeks. Dr. Schofferman found the patient to have increasing pain because of his long work hours and inadequate ergonomic seating. Dr. Schofferman allowed the patient to continue working for 60 days or until better ergonomic accommodations were made for the patient.

I re-evaluated David Glow on October 11, 2007. He had been working long shifts. He had a severe bout of pain when driving a train on which the speedometer was broken. The seat was also loose. The patient had to constantly look behind over his shoulder at the computer screen to determine the speed that the train was traveling. The pain was severe at the end of his shift. The patient did fall asleep but when he awoke, the pain was severe in both the neck and down his arms. He was taken by ambulance to a hospital in Elko. The patient was taken off work by Dr. Schofferman after that injury.

The injury occurred on September 14, 2007, and the date of the emergency room visit was September 15, 2007. David Glow was cared for at Northeastern Nevada Regional Hospital. The patient was re-evaluated by Dr. Jerome Schofferman on September 18, 2007. Dr. Schofferman documents the condition of the train mainly the speedometer was not working and flimsy seat that the patient reported. Dr. Schofferman's note states that the patient was constantly looking back to check the train speed. The patient stated to Dr. Schofferman that within 4 hours, he was feeling severe neck pain and right trapezius pain. I performed a physical examination of the patient on October 11, 2007, and found that there was a limitation in the range of motion of the cervical spine, tenderness over his facets, and a decrease in sensation in the C8 nerve root distribution on the right. At that time, I recommended that the patient retire from any railroad work and arrange for a translaminar epidural from Dr. Hsieh on October 26, 2007. I re-evaluated the patient on October 16, 2007, and the patient reported that he was improved but had a small amount of persistent weakness and numbness on the left arm. I requested an EMG and a medial branch block to the facet for further treatment and diagnosis of this patient's condition. EMG by Dr. Lewis showed a chronic C8 radiculopathy. Surgery was recommended at the C7-T1 level. However, I present the patient at

Page 4
April 28, 2009
Re: David Glow

conference on December 6, 2007. The physician at the conference recommended discography be performed.

Discography of December 12, 2007, showed that a previously normal disc namely C6-7 was abnormal in the reproduction of neck pain and upper back pain. The C6-7 and C7-T1, further surgery was not advised, and the scheduled surgery was canceled. Pain management was recommended for the patient. Dr. Schofferman was to continue treatment and pain management for this patient. The patient was advised not to return to work in the railroad and possibly in the future, the patient would be a candidate for cervical arthroplasty but at this time, such surgery was not advised because the outcomes of arthroplasties are not known when they are associated with a previous surgical fusion.

David Glow has continued to be cared for and be treated with this pain medication by Dr. Schofferman. It is clear that the patient has suffered a 2nd injury that occurred as a result of a combination of a broken speedometer and an unstable seat. The patient was required to constantly turn to look at the computer behind him to determine the train speed. This is clearly a new injury. It is away from the fusion. The pain arises from the C6-7 and C7-T1 discs. C5-6 discs remains normal. Discogram clearly demonstrated painful discs at each of these levels. In the future, the patient more likely than not will require a cervical discectomy and arthroplasty at C6-7 and C7-T1. This will be necessary when pain becomes uncontrollable by medications or the side effects of the medications become too disabling for the patient to function in terms of interacting and participating in activities with his family. The cost of such a procedure would be $100,000.

I reviewed the reports of Paul J. Mills, M.D. The reports are August 5, 2006, July 27, 2007, February 8, 2009 and September 17, 2007. In the report of August 5, 2006, Dr. Mills states that Mr. Glow suffered "No physiologic abnormality which would relate to the blow to the side of the jaw." At that time, Dr. Mills did not have all the medical evidence that later became available for rendering such opinion. In the report of July 27, 2007, Dr. Mills states that, "Subsequent to an altercation with a co-worker that took place on November 6, 2003, and initially led to a sole complaint of a right jaw pain, which at some later point led to complaint of neck pain." The neck pain that Mr. Glow complained of occurred the following day when he saw his primary physician, Dr. Modi. Dr. Modi states in the note of November 7, 2003, "Extreme painful migraine, sharp neck pain in the back of the neck that goes to the mid back, dizzy, blurred vision. The jaw hurts also."

Dr. Modi states, "The patient was discharged from hospital yesterday, vomiting x5 hours." "Vomited x3 today." "Now, complains of throbbing headache and neck pain, midline neck." Dr. Mills does not account for this sudden onset of pain following the blow to the jaw. Dr. Mills does not account for the patient being asymptomatic, working full time, never having a history of neck pain. The onset of neck pain occurred immediately following the blow to the jaw.

On February 8, 2008, Dr. Mills wrote a 3rd report. Dr. Mills' opinion, "It is my opinion that in fact, there is no physiologic diagnosis for the subjective complaints of Mr. Glow." Again, this does not reflect the evaluation and treatment that Mr. Glow has had including MRI, discography, and the abnormal findings that occurred at the patient's cervical fusion at the C4-5 level.

Page 5
April 28, 2009
Re: David Glow

In summary, David Glow's initial injury to his neck was a result of a blow to the jaw. Treatment of subsequent fusion is a result of that injury. It was medically necessary and appropriate treatment for this patient. The surgery only occurred after 2-1/2 years of extensive conservative care without adequate relief of his pain. It also occurred because the patient was no longer able to tolerate the pain continue working as a Locomotive engineer.

The patient clearly sustained a 2nd injury as a result of mechanical defects in the locomotive that he was driving. This caused subsequent injury to the cervical discs namely C6-7 and C7-T1. The patient continues to have persistent pain from these discs. He is under treatment with pain management using substantial narcotics to treat his condition. His treatment was under the care of Dr. Jerome Schofferman.

Dr. Mills' opinions have been reviewed, and in fact, they have not changed despite further medical evidence documenting the source of David Glow's pain.

Sincerely,

*[signature]*

James B. Reynolds, M.D.

JBR/mlr/taa