1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID CHAD GLOW,

                            NO. CIV. S-08-1250 LKK/EFB

       Plaintiff,

     v.

UNION PACIFIC RAILROAD
COMPANY and DOES through 20,         <u>O R D E R</u>
inclusive,

       Defendants.

_____/

     Plaintiff is employed by defendant Union Pacific Railroad
Company as a locomotive engineer. He has brought suit alleging that
defendant, due to the condition of the equipment in some of
defendant's trains, violated the Federal Employers' Liability Act,
45 U.S.C. § 51, the Locomotive Inspection Act, 49 U.S.C. § 20701,
and by virtue of those conditions and other conduct violated the
California Fair Employment and Housing Act, Cal. Gov't Code §
12900. Pending before the court is defendant's motion for summary
judgment on all causes of action. The court resolves the motion on
the papers and after oral argument. For the reasons stated herein,

1

1  the motion is granted in part and denied in part.

2                    **I. BACKGROUND AND FACTS**[1]

3       Plaintiff is a locomotive engineer employed by defendant, who

4  operates as an interstate common carrier. In early 2007, plaintiff

5  was on medical leave and, in June 2007, returned to work. At that

6  time, he was cleared to work without any restrictions.

7       The next month, he sent to defendant's General Superintendent

8  a note written by Dr. Jerome Schofferman on a prescription pad that

9  stated, "Reasonable accommodation, Ergonomic locomotive operator

10 chair, Head/neck rest/ restraint, Good arm rests, Air or hydraulic

11 ride." Plaintiff has tendered evidence that Dr. Schofferman also

12 faxed to defendant's employee Ray Perry a copy of his July 25, 2007

13 evaluation of plaintiff, in which he concluded that plaintiff

14 required a seat with a head restraint or headrest, an air-ride or

15 hydraulic system, and adequate, cushioned arm supports. Decl. of

16 Jerome Schofferman In Support of Pl.'s Opp'n to Def.s' Mot. for

17 Summ. J. ("Schofferman Decl.") ¶ 4, Ex. 2.

18      On September 14, 2007, plaintiff was assigned as a locomotive

19 engineer traveling from Portola, California to Elko, Nevada. The

20 needle of the speedometer in the engineer's console would begin to

21 bounce when the train reached approximately fifty miles per hour.

22 At the time, plaintiff had a watch and a Table of Train Speeds,

23 ─────────────────────

24       [1]All facts are undisputed unless otherwise noted. Defendant
   has objected to several items of evidence tendered by the
25 plaintiff. All of these objections relate to evidence not relied
   on by the court in ruling on the instant motion. Accordingly, the
26 objections are moot.

                                  2

which he could use to calculate the train's speed. There was also a fully functional speedometer in the locomotive's rear panel, which plaintiff could see from his engineer's seat by turning his head and looking over his shoulder. <u>See</u> Decl. of Phillip Ganong In Support of Pl.'s Opp'n to Def.s' Mot. for Summ. J. ("Ganong Decl.") Ex. 4 (Glow Depo. at 32:5-33:21).

Instead of using his watch and table to calculate the train's speed, plaintiff looked at the speedometer on the rear panel. Plaintiff has testified that he did so because to calculate the speed "would be a little bit hard," given that he also had to monitor speed restrictions and signals while the train was traveling. Ganong Decl. Ex. 6 (Glow Depo. at 39:18-40:10). During the ten hour trip, plaintiff looked over his shoulder at the rear speedometer approximately every thirty seconds.

Plaintiff has tendered evidence that the repeated turning of his neck, in light of his prior injury, further injured his spine. Decl. of Peter Francis In Support of Pl.'s Opp'n to Def.s' Mot. for Summ. J. ("Francis Decl.") ¶ 5; <u>see also</u> Decl. of James Reynolds In Support of Pl.'s Opp'n to Def.s' Mot. for Summ. J. ("Reynolds Decl.") Ex. 1 at 3-4. In his separate statement of disputed facts and in his opposition to defendant's motion, plaintiff asserts that the seat at the engineer's console was also "badly maintained," Pl.'s Sep. Statement of Disputed Material Facts in Support of Opp'n to Def.'s Mot. for Summ. J. ¶ 8, but the only evidence tendered to support this is a reference in the report of Dr. James Reynolds, one of plaintiff's treating physicians. There, Dr. Reynolds

3

mentioned notes from an examination performed by Dr. Schofferman on September 18, 2007, in which Dr. Schofferman had documented that the plaintiff reported the train had a "flimsy" seat. Reynolds Decl. Ex. 1 at 3; see also Ganong Decl. Ex. 6 (Glow Depo. at 33:8-21) (describing the seat as "loose with a floppy back," which prevented it from swiveling freely).

On October 23, 2007, Richard Sweet, identified as defendant's claims director, sent a letter to plaintiff denying the July request for accommodation as "unrealistic." See Decl. of Richard Sweet in Support of Def.'s Mot. for Summ. J. ("Sweet Decl.") Ex. B. As an engineer, plaintiff must operate whatever locomotive he is assigned when he is called to duty and defendant asserts that it has over 8,000 locomotives. See Decl. of Gary Harlan in Support of Def.'s Mot. for Summ. J. ("Harlan Decl.") ¶ 3; Sweet Decl. Ex. B. Sweet offered that defendant was willing to purchase for plaintiff either a "McCarty's Sacro Ease Neck Ease" or a "McCarty's Sacro Ease Deluxe seat support" that plaintiff could use at work and for personal use. See Sweet Decl. Ex. B.

Plaintiff responded in writing, asking for additional information about the McCarty products. Defendant responded in writing by directing plaintiff to the McCarty website. On December 6, 2007, plaintiff had surgery to treat his original spine injury.

## II. STANDARD FOR A MOTION FOR SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(C)

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the

4

1  moving party is entitled to judgment as a matter of law.  Fed. R.

2  Civ. P. 56(c); <u>see also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,

3  157 (1970); <u>Secor Ltd. v. Cetus Corp.</u>, 51 F.3d 848, 853 (9th Cir.

4  1995).

5          Under summary judgment practice, the moving party
           [A]lways bears the initial responsibility of informing
6          the district court of the basis for its motion, and
           identifying those portions of "the pleadings,
7          depositions, answers to interrogatories, and admissions
           on file, together with the affidavits, if any," which it
8          believes demonstrate the absence of a genuine issue of
           material fact.

9

10 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "[W]here the

11 nonmoving party will bear the burden of proof at trial on a

12 dispositive issue, a summary judgment motion may properly be made

13 in reliance solely on the 'pleadings, depositions, answers to

14 interrogatories, and admissions on file.'" <u>Id.</u>  Indeed, summary

15 judgment should be entered, after adequate time for discovery and

16 upon motion, against a party who fails to make a showing sufficient

17 to establish the existence of an element essential to that party's

18 case, and on which that party will bear the burden of proof at

19 trial. <u>See</u> <u>id.</u> at 322. "[A] complete failure of proof concerning

20 an essential element of the nonmoving party's case necessarily

21 renders all other facts immaterial." <u>Id.</u>  In such a circumstance,

22 summary judgment should be granted, "so long as whatever is before

23 the district court demonstrates that the standard for entry of

24 summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u>

25 at 323.

26          If the moving party meets its initial responsibility, the

                                      5

1  burden then shifts to the opposing party to establish that a

2  genuine issue as to any material fact actually does exist.

3  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

4  586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co.,

5  391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

6       In attempting to establish the existence of this factual

7  dispute, the opposing party may not rely upon the denials of its

8  pleadings, but is required to tender evidence of specific facts in

9  the form of affidavits, and/or admissible discovery material, in

10 support of its contention that the dispute exists. Fed. R. Civ. P.

11 56(e); Matsushita, 475 U.S. at 586 n.11; see also First Nat'l Bank,

12 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.

13 1998). The opposing party must demonstrate that the fact in

14 contention is material, i.e., a fact that might affect the outcome

15 of the suit under the governing law, Anderson v. Liberty Lobby,

16 Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Ass'n of

17 Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)

18 (quoting T.W. Elec. Serv., Inc. v. Pacific Elec.Contractors Ass'n,

19 809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is

20 genuine, i.e., the evidence is such that a reasonable jury could

21 return a verdict for the nonmoving party, Anderson, 477 U.S. 248-

22 49; see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200

23 F.3d 1223, 1228 (9th Cir. 1999).

24      In resolving the summary judgment motion, the court examines

25 the pleadings, depositions, answers to interrogatories, and

26 admissions on file, together with the affidavits, if any. Rule

1   56(c); see also In re Citric Acid Litigation, 191 F.3d 1090, 1093

2   (9th Cir. 1999). The evidence of the opposing party is to be

3   believed, see Anderson, 477 U.S. at 255, and all reasonable

4   inferences that may be drawn from the facts placed before the court

5   must be drawn in favor of the opposing party, see Matsushita, 475

6   U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,

7   655 (1962) (per curiam)); see also Headwaters Forest Def. v. County

8   of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000). Nevertheless,

9   inferences are not drawn out of the air, and it is the opposing

10   party's obligation to produce a factual predicate from which the

11   inference may be drawn. See Richards v. Nielsen Freight Lines, 602

12   F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

13   (9th Cir. 1987).

14                          **III. ANALYSIS**

15   **A.    Violation of the Federal Employers' Liability Act**

16        In his first cause of action, plaintiff alleges that defendant

17   violated the Federal Employers' Liability Act (FELA), 45 U.S.C. §§

18   51 et seq., by acting negligently in its maintenance of the

19   speedometer and the engineer's seat in the train plaintiff drove

20   on September 14, 2007. Defendant moves for summary judgment on the

21   grounds that a FELA claim will not lie on the basis of an

22   allegation regarding the condition of a piece of equipment that is

23   not required under the Federal Railroad Administration regulations

24   or the Locomotive Inspection Act (LIA) and that this claim is

25   precluded by the LIA and its regulations.

26        The FELA provides that a railroad common carrier is liable for

                                    7

1    its negligence that caused injury to an employee. 45 U.S.C. § 51.

2    Elements of a claim under FELA are the same as that for a common

3    law cause of action for negligence. Norfolk S. Ry. Co. v Sorrell,

4    549 U.S. 158, 164 (2007).

5    Relying on Baltimore & Ohio Railway Company v. Groeger, 266

6    U.S. 521, 528-29 (1925), defendant argues that there can be no

7    liability under FELA for failure to provide equipment not required

8    by the regulations enacted pursuant to the LIA. In Groeger the

9    Court held that it was not error for the trial court to instruct

10   a jury, in a wrongful death action arising from an explosion from

11   a train boiler, that the employer has a duty of ordinary care to

12   maintain the boiler according to the standards set forth in

13   regulations enacted pursuant to the Boiler Inspection Act.[2] The

14   defendant, however, had no obligation "to furnish the latest or

15   best tools of appliances" to its employees.[3] 266 U.S. at 529.

16   However, the Court did not hold that the Boiler Inspection Act

17   regulations were the sole source of the employer's duty to the

18   plaintiff. Id. Instead, it considered industry custom and practice

19   in considering whether defendant had breached a duty to its

20

21   [2]The Boiler Inspection Act later became the LIA. See 49 U.S.C.
     § 20701.

22   [3]Defendant's reliance on Sindoni v. Conrail, 4 F. Supp. 2d
23   358, 364-65 (M.D. Penn. 1996), is not particularly helpful. There,
     plaintiff had alleged in his FELA cause of action that defendant
24   improperly failed to equip the train with safety devices that would
     decrease injuries during a crash. Plaintiff then failed to oppose
25   defendant's motion for summary judgment on this claim and the court
     granted the motion on the basis that plaintiff failed to show that
26   the defendant had a duty to install these devices. Sindoni,
     therefore, offers no substance to aid in the court's discussion.

employees by failing to include certain parts in the boiler. Id.
at 529-30. In an action under the FELA, the plaintiff need only
show that the defendant's conduct fell below the standard for
ordinary care; the plaintiff is not required to prove that a
certain engineering change would have prevented the claimed injury.
Id. at 530-31. It is the jury's duty to consider industry practice
and available alternatives as part of its calculus to determine
whether defendant's conduct was negligent.[4] Id. at 531.

Elsewhere, the High Court has held that railroad employers
simply owe their employees a duty of reasonable care under the
circumstances, not limited by other statutes or regulations. See,
e.g., Wilkerson v. McCarthy, 336 U.S. 53, 60-61 (1949); Anderson
v. Atchinson, T. & S.F. Ry. Co., 333 U.S. 821, 823 (1948);
Delaware, L. & W. Ry. Co. v. Koske, 279 U.S. 7, 11 (1929). It has
also been held that a railroad employer has a duty to inspect and
maintain its property, such that a failure to do so may give rise
to a FELA claim. See Schilling v. Del. & H.R. Corp., 114 F.2d 69,
71 (2d Cir. 1940); Almendarez v. Atchinson, T. & S.F. Ry. Co., 426
F.2d 1095 (5th Cir. 1970).

Here, the defendants have not directed the court to any
authority that would lead the court to conclude that if plaintiff
cannot prove a violation of the LIA or its regulations, plaintiff
necessarily cannot prove a violation of the FELA. Plaintiff's

---

[4]In contrast, violation of a regulation under the LIA is proof
of negligence per se in a FELA cause of action. Law v. General
Motors Corp., 114 F.3d 908, 912 (9th Cir. 1997).

1  evidence (and allegations as pled) indicate that his theory for

2  this claim is that defendant negligently failed to maintain the

3  speedometer and the engineer's seat in the train that he drove on

4  September 14, 2007. This theory appears entirely consistent with

5  the Court's exposition of what a FELA cause of action must show.

6  See, e.g., Groeger, 266 U.S. at 528-31; Wilkerson, 336 U.S. at 60-

7  61; Anderson, 333 U.S. at 823; Koske, 279 U.S. at 11. The Groeger

8  Court's statements that a cause of action will not lie simply on

9  the allegation that defendant did not use state of the art

10  equipment appears irrelevant here, as plaintiff's claim appears

11  simply to assert that the equipment that was used was negligently

12  maintained. Groeger provides no basis for the dismissal of

13  plaintiff's claim on this theory.

14      Nor is the court persuaded by defendant's argument that

15  plaintiff's FELA claim is precluded by the regulations enacted

16  pursuant to the LIA. Defendant relies on Norfolk & Western Railway

17  Company, 218 F.3d 773, 776 (7th Cir. 2000), where the court held

18  that a plaintiff could not bring a claim under FELA for defendant's

19  alleged operation of a train at unsafe speeds because the Federal

20  Railroad Safety Act set forth a national standard of train speeds.

21  In other words, the plaintiff could not through his FELA claim hold

22  the defendant to a higher standard than that required by the FRSA.

23  218 F.3d at 776. The court is not aware of any authority in this

24  circuit holding that a claim for negligence under the FELA is

25  precluded if the defendant complied with the LIA regulations.

26      Moreover, the only relevant regulation to which the defendant

1  directs the court is 49 C.F.R. § 229.117(a)(2), which requires that

2  trains traveling over twenty miles per hour contain a speed

3  indicator that is "[c]learly readable from the engineer's normal

4  position." Here, plaintiff has tendered evidence that the working

5  speedometer in the September 14 train was located behind him, so

6  that in order to see it he had to swivel his chair and turn his

7  head. See Pl.'s Sep. Statement of Disputed Material Facts in

8  Support of Opp'n to Def.'s Mot. for Summ. J. ¶ 12. If a jury were

9  to conclude that this rendered the speedometer not clearly readable

10 from plaintiff's normal position, then plaintiff's FELA claim would

11 be consistent with the requirements imposed by the regulation and,

12 therefore, no question of preclusion would arise.

13      Accordingly, defendant's motion for summary judgment as to

14 plaintiff's first cause of action is denied.

15 **B.    Violation of the Locomotive Inspection Act**

16      In his second cause of action, plaintiff alleges that

17 defendant violated the LIA by maintaining the speedometer and

18 engineer's seat in the September 14, 2007 train in an unsafe

19 condition. Because the only working speedometer was located behind

20 him and the seat did not protect him adequately from "shocks,

21 jolts, and vibrations," plaintiff alleges that his neck was injured

22 by defendant's violation, leading to medical and other expenses.

23 Compl. ¶ 12. In his opposition to defendant's motion, plaintiff

24 concedes that he does not premise his claim on the design of the

25 seat, only its condition.

26      The LIA requires that railroad carriers may only operate

11

trains that "are in proper condition and safe to operate without
unnecessary danger of personal injury" and have been inspected. 49
U.S.C. § 20701. The regulations providing safety requirements for
trains are set forth at 49 C.F.R. §§ 229.1-229.139. The regulations
require that, *inter alia*, speedometers in trains be clearly
readable from the engineer's normal position and that they be
accurate within +/- 5 miles per hour when traveling at speeds over
thirty miles per hour. 49 C.F.R. § 229.117. The only requirements
governing train seats is that they be "securely mounted and
braced." 49 C.F.R. § 229.119(a).

However, courts have held that a defendant may violate the LIA
even if it has not violated a specific regulation issued under the
statute. This is because the LIA contains a "broad duty to keep all
parts and appurtenances of its locomotives in proper condition and
safe to operate without unnecessary peril to life and limb." McGinn
v. Burlington N. Ry. Co., 102 F.3d 295, 298-99 (7th Cir. 1996)
(citing Lilly v. Grand Trunk W. R.R. Co., 317 U.S. 481 (1943)).
Applying this rule, several courts have held that a defendant's
failure to maintain its engineer's seat in safe condition
constitutes a violation of the LIA. See Terrell v. Soo Line R.R.,
No. 2:04-cv-095-JDT-WGH, 2005 WL 4882750 (S.D. Ind. Sept. 1, 2005)
(seat was inadequately cushioned so that plaintiff bounced up and
down during a crash); Spade v. CSX Transp., No. 5:02-cv-129, 2004
WL 2980740 (W.D. Mich. Jan. 30, 2004) (weld holding the backrest
to the seat broke while plaintiff was sitting in it); Kleeberg v.
Norfolk S. R.R., No. 00-C-963, 2001 WL 914460 (N.D. Ill. Aug. 13,

2001) (seat's adjustment mechanism was broken, impeding his ability to get out of it during a crash).  I agree.

Under the plain language of the LIA, all parts and appurtenances of a train must be safe and in proper condition. 49 U.S.C. § 20701. Neither the LIA nor the regulations governing rail safety suggest that the regulations are the sole measurement of whether section 20701's mandate has been met. Instead, it appears consistent with the language of the statute and its purpose generally to require that once a rail carrier installs a piece of equipment in a train, it must maintain it properly. Accordingly, the poor condition of a seat may give rise to a LIA violation, despite there being no regulation governing the cushioning of the seat so as to prevent the asserted "shocks, jolts, and vibrations" plaintiff alleges he experienced. See Compl. ¶ 12.

In order to state a violation of the LIA, the plaintiff must show that the complained-of condition created a safety hazard. Oglesby v. S. Pac. Transp. Co., 6 F.3d 603, 610 (9th Cir. 1993). It is not enough for plaintiff to show that the device or appurtenance did not work properly. Id. Defendant argues that the alleged defect in the speedometer and the seat do not meet this standard because there was a functional speedometer at the back of the engineer's cab and because "there is no plausible scenario" that the defective seat constituted a danger to plaintiff. Def.'s Mot. for Summ. J. at 5-6. Plaintiff counters that this standard is met because he has tendered evidence that he in fact suffered injury from both the defective seat and having to turn around to

1  look at the speedometer.

2      Although the Ninth Circuit has not since expounded on

3  Oglesby's requirements in the summary judgment context, it appears

4  that there are sufficient facts to permit a reasonable jury to find

5  in plaintiff's favor on this element. The courts that have

6  considered what showing a plaintiff must make to demonstrate that

7  the condition of a device possesses an "unnecessary danger of

8  personal injury," 49 U.S.C. § 20701, have held that this is an

9  issue of fact for the jury so long as there are some facts from

10 which a jury could infer that such a danger existed. See Calabritto

11 v. New York, New Haven & Hartford R. Co., 287 F.2d 394, 395 (2d

12 Cir.) ("the use of an engine whose surface has been made slippery

13 by sand and oil may ... be found by a jury to involve 'unnecessary

14 peril to life or limb' in violation of the . . . BIA"), cert.

15 denied, 366 U.S. 928 (1961); Topping v. CSX Transp., Inc., 1 F.3d

16 260, 261 (4th Cir. 1993) ("It seems to us a classic jury question

17 whether the presence of the loose metal object rendered the

18 locomotive cab 'unsafe to operate'"); Gregory v. Missouri Pac. R.

19 Co., 32 F.3d 160, 162-63 & n.6 (5th Cir. 1994) ("Because there is

20 evidence of such quality and weight that reasonable and fair-minded

21 men in the exercise of impartial judgment might reach different

22 conclusions . . . as to whether the oil constituted an unnecessary

23 peril, that question should have been presented to the jury"

24 (citations omitted)); Louisville & N.R. Co. v. Botts, 173 F.2d 164,

25 167 (8th Cir. 1949) ("trial court clearly was entitled to allow the

26 jury to decide whether the footboard, in the use to which the

1  switch engine was put, was in proper condition and safe to operate

2  without unnecessary peril to life or limb"); see also Lilly v.

3  Grand Trunk W. R. Co., 317 U.S. 481, 489 (1943) ("The use of a

4  tender, upon whose top an employee must go in the course of his

5  duties, which is covered with ice seems to us to involve

6  'unnecessary peril to life or limb' -- enough so as to permit a

7  jury to find that the Boiler Inspection Act has been violated").

8  In most of these cases, the courts have merely considered the

9  inferences the jury might draw from the nature of the device or

10 condition, rather than requiring any additional, specific evidence

11 of hazard or peril. See, e.g., Calabritto, 287 F.2d at 395;

12 Gregory, 32 F.3d at 162-63.

13      Here, plaintiff has tendered evidence from which a jury could

14 conclude that the combination of the working speedometer being

15 behind him and the unsupportive seat created an unnecessary danger

16 of back injury. See Reynolds Decl. Ex. 1. Certainly, defendant has

17 not tendered any evidence to show that such a conclusion is

18 insupportable. See Lilly, 317 U.S. at 489-91. Defendant's motion

19 is denied as to this cause of action.

20 **C.    Violation of the California Fair Employment and Housing Act**

21      In his third cause of action, plaintiff alleges that defendant

22 violated the FEHA by failing to accommodate his work restrictions

23 resultant from his initial back injury. Because of this failure,

24 plaintiff alleges, he suffered additional back and neck injuries

25 during the September 14, 2007 trip.

26      In its motion for summary judgment, defendant argues that this

claim is preempted by FELA, the LIA, and the Federal Rail Safety Act. It also argues that plaintiff cannot show that he was disabled, that he was discriminated against, and that defendant failed to provide a reasonable accommodation.

### 1.   Preemption

The Ninth Circuit has held that the LIA and FELA preempts state laws "touching upon the safety of locomotive parts and appurtenances." Law, 114 F.3d at 910 (internal citations omitted). The court concluded that through the statute Congress intended to occupy the filed of train equipment and safety. Id.; see also Napier v. Atlantic Coast Line R.R., 272 U.S. 605, 611 (1926) (holding that the BIA preempts any state law that would affect "the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances"). Therefore, the LIA preempts common law tort claims alleging, for example, faulty design of a train part, Law, 114 F.3d at 910-11, or inadequate warning devices. Forrester v. Am. Dieselelectric, Inc., 255 F.3d 1205 (9th Cir. 2001); Marshall v. Burlington N., Inc., 720 F.2d 1149 (9th Cir. 1983). Furthermore, to the extent that a plaintiff's claim rests on state law theories of inadequate safety devices or systems for a train, the action is preempted by the Federal Railroad Safety Act (FRSA). Norfolk S. Ry. Co. v. Shanklin, 529 U.S. 344, 358-59 (2000).

It appears that the Court of Appeals has not addressed the issue. Nevertheless, it does not seem to the court that FELA, LIA or FRSA preempt state claims of disability discrimination and

accommodation by a railway employer. In order to find preemption, the state statute in question must "conflict[] with, or frustrate[], federal law." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663 (1993). To find field preemption, which defendant asserts here, the preempted field is "defined by reference to the purpose of the state law in question," and for "a state law to fall within the preempted zone, it must have some direct and substantial effect on the regulated field." English v. Gen. Elec. Co., 496 U.S. 72, 84-85 (1990). However, principles of federalism dictate that a federal statute will not be given preemptive effect unless it was Congress's clear, manifest purpose. Id. (citing Rice v. Santa Fe Elevator Corp., 331 U.S. 218 (1947)); S. Pac. Transp. Co. v. Public Utility Comm'n of State of Oregon, 9 F.3d 807, 810 (9th Cir. 1993).

The cases finding preemptive effect of the FRSA, LIA, or FELA have relied on the fact that the federal statutes set forth national, uniform standards of minimum safety requirements for trains, train parts, and related machinery. See Norfolk S. Ry., 529 U.S. at 354-56; Law, 114 F.3d at 909-10; Forrester, 255 F.3d at 1209-10. In contrast, the Court of Appeals has held that the LIA does not preempt a state law that set standards for the speed of trains and loudness of warning devices as the train traveled through the state, as the federal statute only regulated the "design, construction and material" of trains and related devices, not their use. S. Pac. Transp. Co., 9 F.3d at 811. The same state law also was not preempted by the FRSA because the FRSA only regulated the sound-producing capacity of train whistles, not their

1  use. Id. at 813. The court observed that preemption under the FRSA

2  is extremely difficult to establish, as the Supreme Court has held

3  that the FRSA only preempts those state laws that "cover" the same

4  subject matter, not those that only "touch on" or "relate to" the

5  purpose of the FRSA. Id. (citing CSX Transp., Inc., 507 U.S. at

6  664-65).

7       Here, it appears to the court that plaintiff's claim under the

8  California Fair Employment and Housing Act is not preempted by the

9  LIA, FELA, or FRSA. The purpose of the Fair Employment and Housing

10 Act (FEHA) is to provide protection from employment and housing

11 discrimination to persons with disabilities. Cal. Gov't Code §§

12 12920, 12926.1. It prohibits employers from, inter alia, failing

13 to make a reasonable accommodation for disabled employees. Id. §

14 12940(m). Violation of this requirement is considered a violation

15 of the employee's civil rights. Id. § 12921.

16      The purpose of the FEHA, therefore, is the elimination of

17 employment discrimination based on physical disability, among other

18 characteristics. Comparing this to the scope and purpose of the

19 LIA, FELA, and FRSA, see English, 496 U.S. at 84-85, the lack of

20 preemption is apparent. The FEHA does not frustrate those statutes,

21 nor does it have a "direct and substantial effect" on the field of

22 locomotive safety, even broadly defined. See id. It certainly does

23 not cover the same subject matter as the FRSA. CSX Transp., Inc.,

24 507 U.S. at 664-65. Instead, the FEHA requires reasonable

25 accommodation of disabilities. Where the employer is a railroad

26 company, accommodation may involve modification of train facilities

1  or equipment. However, the fact that this may be a remedy ordered

2  or undertaken does not mean that the FEHA covers the same subject

3  matter of the federal statutes or that it would otherwise impinge

4  on the field of train safety. This minimal, incidental overlap does

5  not suffice to justify preemption here.

6          **2.   Elements of the FEHA Cause of Action**

7          In his third cause of action, plaintiff alleges that defendant

8  discriminated against him on the basis of his disability and failed

9  to accommodate his disability, both in violation of the FEHA. To

10 make a prima facie case of discrimination, plaintiff must show that

11 he was a member of a protected class, that he was performing

12 competently the position he held, that he suffered an adverse

13 employment action, and that there is evidence from which a

14 factfinder could conclude that defendant had a discriminatory

15 motive. <u>Guz v. Bechtel Nat. Inc.</u>, 24 Cal. 4th 317, 354 (2000)

16 (applying test of <u>McDonell Douglas Corp. v. Green</u>, 411 U.S. 792

17 (1973)). In its motion for summary judgment, defendant asserts that

18 there is no evidence that plaintiff suffered adverse employment

19 action. Plaintiff has not responded to this and has tendered no

20 evidence of defendant's adverse employment action. Therefore, to

21 the extent that his third cause of action alleges employment

22 discrimination, defendant's motion must be granted. <u>See</u> <u>Celotex</u>

23 <u>Corp.</u>, 477 U.S. at 323.

24         To make a prima facie case under the FEHA of failure to

25 accommodate a disability, plaintiff must show that he had a

26 disability under the FEHA, he was qualified to perform the

                                   19

essential functions of his position and that his employer failed to make reasonable accommodations. Scotch v. The Art Inst. of Cal., 173 Cal. App. 4th 986, 1009-1010 (2009). A person is disabled if his condition limits or makes difficult his major life activities, including his ability to work. Cal. Gov't Code § 12936.1(c); Gelfo v. Lockheed Martin Corp., 104 Cal. App. 4th 34, 47 (2006).

Although plaintiff has not responded to defendant's motion on this issue, there is some evidence that he was disabled under the FEHA. Plaintiff has tendered the declaration and evaluations of his treating physician that provided that in July and September 2007, plaintiff had neck and arm pain. Schofferman Decl. Ex. 3-4; see also Reynolds Decl. Ex. 1 at 3. There is also evidence that by October 2007, plaintiff had pain, limited range of motion, and decreased sensation in some areas. Reynolds Decl. Ex. 1 at 3-4. As a result, at that time Dr. Reynolds advised plaintiff to retire from railroad work. Id. at 3. Severe pain can be a physical disability under the FEHA. See Arteage v. Brink's, Inc., 163 Cal. App. 4th 327, 347 (2008). Here, there is evidence that plaintiff's pain in July through October, 2007, was moderate to severe but increasing and was eventually accompanied by numbness and weakness in one arm. See Schofferman Decl. Ex. 3-4; Reynolds Decl. Ex. 1 at 3-4. Based on this, the court cannot agree with defendant that as a matter of law plaintiff was not disabled under the FEHA.

Defendant also argues that it did not fail to provide plaintiff a reasonable accommodation. A reasonable accommodation is a modification or adjustment to the work environment that

20

1   enables the employee to perform the essential functions of his job.

2   Scotch, 173 Cal. App. 4th at 1010. Here, it is undisputed that in

3   October 2007, defendant's director of claims responded to

4   plaintiff's request for accommodation by offering to purchase

5   certain neck or seat supports for plaintiff. He further requested

6   that if plaintiff or his physician had any other suggestions for

7   accommodation to forward them to him, because "[t]he company is

8   open to an ongoing dialogue with the goal of addressing whatever

9   physical limitations [plaintiff] might have which affect his

10  ability to perform the necessary tasks of his job." Sweet Decl. Ex.

11  B. It is also undisputed that plaintiff responded by asking for

12  more information about the neck and seat supports and that

13  defendant replied by directing plaintiff to the manufacturer's

14  website and noting that a doctor at plaintiff's treating medical

15  center had prescribed these in the past. See id. Ex. B-D. This last

16  communication occurred on November 8, 2007. See id. Ex. D.

17  Plaintiff has tendered no evidence of additional communications

18  with defendant by him or his physicians in response to the offer

19  for the neck and seat supports. See generally Pl.'s Sep. Statement

20  of Disputed Material Facts in Support of Opp'n to Def.'s Mot. for

21  Summ. J.; Glow Decl.; Schofferman Decl.

22      A defendant employer may succeed on a motion for summary

23  judgment on a FEHA claim for failure to make a reasonable

24  accommodation if it shows that the employer did everything in its

25  power to find a reasonable accommodation but that the informal

26  interactive process with the employee broke down because the

1    employee failed to engage in good faith discussions. <u>Jensen v.</u>

2    <u>Wells Fargo Bank</u>, 85 Cal. App. 4th 245, 263 (2000). Here, plaintiff

3    sought a reasonable accommodation for his back and neck pain by

4    requesting a modified chair that was ergonomic, had head or neck

5    rests, arm rests, and contained air cushioning or hydraulics. Glow

6    Decl. Ex. 1. Defendant responded by offering to purchase a seat or

7    neck support for plaintiff's chair or consider any other suggestion

8    plaintiff or his doctor had. Given that modification of the seat

9    so as to give more support to plaintiff's neck and upper body was

10   precisely what plaintiff sought in his request for accommodation,

11   a jury could find that defendant's offer was reasonable. The

12   undisputed evidence is that plaintiff simply failed to follow up

13   on this offer, which, under <u>Jensen</u>, would bar his subsequent claim

14   for failure to accommodate his disability.

**IV. CONCLUSION**

16        For the reasons stated herein, defendant's motion is DENIED

17   as to plaintiff's first and second causes of action and GRANTED

18   as to plaintiff's third cause of action.

19        IT IS SO ORDERED.

20        DATED:  August 26, 2009.

23   LAWRENCE K. KARLTON
     SENIOR JUDGE
24   UNITED STATES DISTRICT COURT

22